**SUN INS. OFFICE, Limited, v. RUPP.**
**RUPP v. SUN INS. OFFICE, Limited.**
**Nos. 54, 55.**

District Court, W. D. Missouri,
Chillicothe Division.
Feb. 20, 1946.

534

Robert C. Frith, of Chillicothe, Mo., for John C. Rupp, doing business as Rupp Bros. Oil Co.

Ira B. Burns and Chet Vance, both of Kansas City, Mo., for Sun Ins. Office, Limited.

DUNCAN, District Judge.

This matter is before the court on the petition of the Sun Insurance Office, Ltd., a corporation, organized under the laws of the State of New York, for declaratory judgment with respect to its liability under certain policies of insurance issued to John C. Rupp, an individual, doing business as Rupp Brothers Oil Company, a citizen of Missouri; and the complaint of John C. Rupp, doing business as Rupp Brothers Oil Company, against the Sun Insurance Office, Ltd., to recover under said policies for the loss of certain automotive equipment consisting of a White Tractor and Fruehauf truck.

These cases have been consolidated for purposes of hearing.

John C. Rupp, doing business as Rupp Brothers Oil Company, was engaged in the oil business at Chillicothe, Missouri, and as such owned and operated a transport service consisting of an automobile truck and trailer tank. The said John C. Rupp acquired the White automobile truck new in August 1941 and paid therefor the sum of $2504. In August 1942 he acquired, by purchase, the Fruehauf semi-trailer truck, with a capacity of 2986 gallons, 1936 model, for which he paid the sum of $2000.

August 14, 1943, the insurer issued to said John C. Rupp its policy of insurance No. SA 905635 insuring the said tractor against loss by reason of "Collision or Upset," "Fire, lightning and transportation," "Theft" and "Combined Additional Coverage" for which he paid a total premium of $117.15.

On October 29, 1943, the insurer issued to said John C. Rupp its policy of insurance No. SA 905654 insuring said trailer against loss by reason of "Collision or Upset," "Fire, lightning and transportation," "Theft," and "Combined Additional Coverage" for which he paid total premium in the sum of $94.60.

Thereafter on February 1, 1944, the tractor and semi-trailer were totally destroyed as a result of a "collision or upset." Subsequently on April 3, 1944, the insured filed his proof of loss in which he stated the actual cash value of the property to be $7000 and that the actual loss and damage was $5000.

Thereafter on May 19, 1944, the insured filed amended proofs of loss in which he claimed the actual cash value of the motor truck to be $2675.78 and claimed the sum of $2500 for the replacement thereof, and the actual cash value of the semi-trailer to be $2857.58 and claimed the sum of $2500 for its replacement, making a total cash value as claimed by the insured $5533.36, and the amount claimed from the insurer the sum of $5000. This amount the insurer refused to pay.

On July 20, 1944, the sixty-first day following the filing of the amended proofs of loss, the insurer filed in this court its petition for declaratory judgment, praying the court to "hear and adjudicate the issues between the plaintiff and defendant; to declare, fix and determine the liability of the plaintiff and fix amount of its liability therefor and for its costs."

Thereafter on July 21, 1944, the insured filed his petition in two counts in the Circuit Court of the State of Missouri, within and for Livingston County, against the insurer. In the first count of his petition he asked for the sum of $2857.58 for the loss of the semi-trailer, and for damages and attorney's fees; and in the second count for the sum of $2675.78 together

with damages and attorney's fees for the loss of the tractor. Thereafter the case was removed to this court.

The facts are not in dispute. On February 1, 1944, while both policies were in full force and effect, all of the equipment covered by both policies was totally destroyed as a result of a collision with another motor vehicle, causing such equipment to be turned over and burned.

The policies are identical, except as to description of property and amounts of coverage, and there is set forth herein that portion of the policies containing a description of the coverage, and the premiums paid therefor as follows:

Policy No. SA 905635:

| Coverages (as hereinafter defined) | Limits of Liability (Insert Amount or "Actual Cash Value") | Net Rate | Premium |
|---|---|---|---|
| A Comprehensive—Loss of or Damage to the Automobile, Except by Collision but including Fire, Theft and Windstorm | $ | $ | $ |
| B–1 Collision or Upset | Actual Cash Value less $100.00 which deductible amount shall be applicable to each Collision or Upset | | $ 48.00 |
| B–2 Convertible Collision or Upset Additional Payment $ | Actual Cash Value | | $ |
| C Fire, Lightning and Transportation | $1,000.00 | $6.25 | $ 62.50 |
| D–1 Theft (Broad Form) | $1,000.00 | $ .50 | $ 5.00 |
| D–2 Theft (Deductible Form) | | $ | $ |
| E Windstorm, Earthquake, Explosion, Hail or Water | | $ | $ |
| F Combined Additional Coverage | $1,000.00 | $ .20 | $ 2.00 |
| G Towing and Labor Costs | $10 for each disablement | | |
| | | / Total Premium | $117.50 |

Item 4.  Description of the automobile and facts respecting its purchase by the insured:

| Year of Model | Trade Name    Model | Body Type: Truck Load Capacity or Factory Gross Weight; Tank Gallonage Capacity: or Bus Seating Capacity | Serial Number Motor Number S M 100–A–113 | Number of Cylinders |
|---|---|---|---|---|
| 1941 | White | Tractor | | |

| F. O.B. List Price or Delivered Price at Factory | Actual Cost When Purchased Including Equipment | Purchased Month,  Year | New or Used |
|---|---|---|---|
| | $2504.00 | M Aug. Y 1941 | New |

Policy No. SA 905654:

| Coverages (as hereinafter defined) | Limits of Liability (Insert Amount or "Actual Cash Value") | Net Rate | Premium |
|---|---|---|---|
| A Comprehensive-Loss of or damage to the Automobile, Except by Collision but including Fire, Theft and Windstorm | $ | $ | $ |

| Coverages (as hereinafter defined) | Limits of Liability (Insert Amount or "Actual Cash Value") | Net Rate | Premium |
|---|---|---|---|
| B-1 Collision or Upset | Actual Cash Value less $100.00 which deductible amount shall be applicable to each Collision or Upset | | $39.00 |
| B-2 Convertible Collision or Upset Additional Payment | $ Actual Cash Value | | |
| C Fire, Lightning and Transportation | $ 800.00 | $6.25 | $50.00 |
| D-1 Theft (Broad Form) | $ 800.00 | $ .50 | $ 4.00 |
| D-2 Theft (Deductible Form) | | $ | $ |
| E Windstorm, Earthquake, Explosion, Hail or Water | | $ | $ |
| F Combined Additional Coverage | 800.00 | $ .20 | $ 1.60 |
| G Towing and Labor Costs | $10 for each disablement | | |
| | $ | $ | $ |

/ Total Premium $94.60

Item 4. Description of the automobile and facts respecting its purchase by the insured:

| Year of Model | Trade Name Model | Body Type: Truck Load Capacity or Factory Gross Weight; Tank Gallonage Capacity or Bus Seating Capacity | Serial Number Motor Number | Number of Cylinders |
|---|---|---|---|---|
| 1936 | Fruehauf | 2936 Gals. Semi-trailer | S 44759 M | |

| F. O. B. List Price of Delivered Price at Factory | Actual Cost When Purchased Including Equipment | Purchased Month, Year | New or Used | Encumbrance |
|---|---|---|---|---|
| New $1895.00 | $1000.00 | M Aug. Y 1942 | Used | $ None " |

(The above item of $1000 by special endorsement was changed to $2000.)

It will be observed that under B–1 of the policy covering the tractor, loss by "Collision or Upset" provided for the payment of the "Actual Cash Value less $100.00 which deductible amount shall be applicable to each Collision or Upset," and for this separate coverage, the amount of $48 premium was charged.

With respect to loss arising from "Fire, lightning and transportation," liability of the insured under item "C" is $1000 for which a separate rate of $6.25 per hundred, or a total of $62.50, was charged.

Under the next item "Theft" the limitation of liability is likewise $1000. For this coverage a separate rate of 50¢ per hundred, or a total of $5, was charged. For "Combined Additional Coverage" under item "F" the limitation of liability likewise was fixed at $1000 for which 20¢ per hundred was charged, or a total of $2, making a grand total of $117.50.

It will also be observed that under B–1 of the policy covering the trailer, loss by "Collision or Upset" provided liability for the payment of the "Actual Cash Value less $100.00 which deductible amount shall be applicable to each Collision or Upset" and for this coverage the amount of $39 was charged.

With respect to loss arising from "Fire, lightning and transportation" under item "C" the limit of the liability is $800 for which a separate rate of $6.25 per hundred, or a total of $50, was charged.

The next item "Theft," the limitation of the liability is likewise fixed at $800. For this coverage a separate rate of 50¢ per hundred, or a total of $4, was charged. For "Combined Additional Coverage" under item "F" the limitation of liability was likewise fixed at $800 for which 20¢ per hundred was charged, or a total of $1.50, making a grand total of $94.60.

The insurer contends that the actual cash value of each piece of equipment is that amount which is set out in each policy, i. e. with respect to loss by "fire, lightning and transportation," "theft" and "combined additional coverage"; such limit of liability is $1000 with respect to the tractor

and $800 with respect to the trailer; that its liability for loss through "Collision or Upset" for which it agreed to pay the actual cash value, is limited to these amounts, but that if these amounts are not to be considered as the actual cash value as described in "B–1, Collision or Upset," then the actual cash value must be found to be the ceiling prices fixed by the Office of Price Administration.

On the contrary, the insured contends that the limitation of liability with respect to the particular contingencies do not limit his right to recover the actual cash value of the property through loss by "Collision or Upset." The insured also contends that the ceiling prices established by the Office of Price Administration do not apply under the provisions of Order RMPR 341 8 F.R. 111 Par. 18(e).[1]

I am convinced that the insured is not limited in the amount he is entitled to recover because of loss by "Collision or Upset" to the amount of $1000 for the tractor, and to the sum of $800 for the trailer. The only limitation upon the amount of recovery for loss through "Collision or Upset" is the "Actual Cash Value" and the policy contains no agreement as to what that value is. For this particular coverage, the insurer charged a definite and fixed sum in each policy.

In view of the foregoing, I must conclude that insured is entitled to recover the actual cash value for the loss of his insured equipment on February 1, 1944, regardless of the limitation upon the amount which he would have been entitled to had the loss resulted from some other contingency set out in the policy.

Having determined that insured is entitled to recover the actual cash value of the insured equipment, the question is how to arrive at the actual cash value. The courts have construed such a provision of an insurance policy many times, and I think there is no dispute but that the general rule is that laid down in Mack & Co. v. Lancashire Ins. Co. et al., C.C., 4 F. 59, in which the court said:

"In such case the term 'actual cash value' means the sum of money the insured goods would have brought for cash, at the market

---

[1] "The term 'sale' does not refer to the adjustment of losses made in connection with settlements of claims under policies of insurance against fire, theft, collision, other loss of property or other coverage, even though the right of subrogation may be involved. The term 'sale', 'seller', 'selling', 'purchase', 'purchaser' and 'purchasing' shall be construed accordingly."

price, at the time when, and place where, they were destroyed."

This rule is supported by many decisions. Vol. 2, Words and Phrases, Perm.Ed., pp., 221, 222.

In Ohio Casualty Co. v. Stewart, Tex. Civ.App., 76 S.W.2d 873, 874, 878 the court said:

" 'Actual cash value' of property is price it will bring in fair market after fair and reasonable efforts to find purchaser who will pay highest price, or fair or reasonable cash price for which property can be sold in market, * * *."

At the time of the loss of the property economic conditions resulting from the War were unusual and unprecedented, and the Congress had found it necessary, for the preservation of our domestic economy and for the prevention of inflation, to cause ceiling prices to be placed upon almost every commodity including the type of equipment covered by the policies, so that there was an unnatural price structure as a result of the control measures. No such equipment could have been sold under existing law, for a price in excess of that fixed by the office of Price Administration regulations, without incurring not only civil penalties, but becoming liable to criminal prosecution.

It would seem therefore that the ordinary rules of law defining "actual cash value" as that value which the property would ordinarily bring in the open market is not applicable in this case.

If this were not an action upon an insurance policy, our problem would be considerably simplified, and we would have to look only to the ceiling price placed on the equipment by the Office of Price Administration to find the amount of recovery, but again that is not the fact, because the order of Office of Price Administration aforesaid provides in section 18(e) that:

"The term 'sale' does not refer to the adjustment of losses made in connection with settlements of claims under policies of insurance against fire, theft, collision, other loss of property or other coverage, even though the right of subrogation may be involved. The term 'sale', 'seller,' 'selling,' 'purchase,' 'purchaser' and 'purchasing' shall be construed accordingly."

The regulations promulgated by the Office of Price Administration provide that such rules and regulations shall not apply to settlements under policies of insurance. However, it seems to me that the court is definitely confronted with the proposition of how the actual cash value under conditions as they existed at the time of the loss under the Emergency Price Control Act might be arrived at.

The insured found himself in the anomalous position that settlements and adjustments for loss arising under policies of insurance were specifically excluded from the provisions of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq., yet by that Act the normal market value of all equipment like that insured, had been completely destroyed and all prices arbitrarily fixed by law, which it would seem rendered inapplicable the construction placed by the courts upon the phrase "actual cash value."

We are faced with the problem that there was no market price for such equipment other than the ceiling prices established by the Office of Price Administration, and the very Act which created those ceiling prices specifically exempted adjustments under policies of insurance from the provisions of the Act. Had the owner of this property gone out into the open market and sold the equipment for an amount in excess of these ceiling prices, as heretofore stated, he would have been liable not only to the person to whom he sold it for severe penalties, but would also have subjected himself to criminal prosecution.

We must therefore find some other way of arriving at the actual cash value of the destroyed property. The owner testified that the equipment was essential to the conduct of his business, and that he was not able to acquire like equipment elsewhere at any price.

At the trial it was stipulated for the purpose of arriving at the ceiling price placed on such equipment by the Office of Price Administration, that the list price of the White tractor, together with the accessories that had been placed thereon, and which were on said tractor at the time it was destroyed, amounted to $2945.63. The evidence showed that not only the tractor, but the trailer tank as well had been completely and thoroughly overhauled about three weeks prior to the date of its destruction.

At the time the policy covering the tractor was issued on October 29, 1943, the insured stated that the actual cost when purchased, including equipment, was $2504.00.

There is no evidence before the court that any accessories were placed upon the tractor subsequent to its purchase and the issuance of the policy.

■ The court should take judicial notice of that which is commonly known. Certainly it was a matter of common knowledge that motor vehicles of all kinds, commercial and pleasure, in February 1944 were in greater demand than ever before, and that immediately prior to establishing ceiling prices, all motor vehicles of the age of this tractor, were selling for amounts in excess of the cost price.

Certainly under the circumstances the court may assume that insured had no intention whatsoever of selling or otherwise disposing of equipment which was so essential to his business, and which it was impossible to replace. By this suggestion I do not mean to imply that the value upon the property may be based upon its value to the insured. As a matter of fact, the only evidence as to the value of the destroyed equipment offered by the insured was what it was worth to him. Of course, that evidence was excluded upon objection.

Judge Atwell in Tierney v. General Exchange Ins. Corp., D.C.Tex., 60 F.Supp. 331, 332, in speaking of the Second War Powers Act, 50 U.S.C.A.Appendix, § 631 (the section under which the regulations respecting Office of Price Administration price ceilings are promulgated), said:

"Nor is there anything in the Act or regulations which compels the owner of property to dispose of it. The owner who has paid for an automobile and who does not see fit to 'sell' that automobile, or to 'deal' in it, ought not to be classified as a 'seller' or a 'dealer' if and when he seeks pay from an insurance company which has collected a premium from him and agreed to pay him for the fire loss of his property. Such an event does not classify him as either a 'seller' or a 'dealer.' He has not been identified in any of the regulations under the Act, and seems to have been excepted from their operations."

In this case the insured apparently had no intention of selling his property. Had he done so, he would have been limited to the lower ceiling price set by the Office of Price Administration.

■ I think it is reasonable to assume under the circumstances and under the evidence in this case, that the actual cash value of the tractor at the time it was destroyed was equal to its value at the time it was acquired in 1941 i. e., $2504.

From the $2504 should be deducted the sum of $100 as provided by the policy. The insured is entitled to recover the sum of $2404.

While the conditions with respect to the semitrailer tank are somewhat different, I think the method of arriving at its actual cash value should be the same as that used in arriving at the value of the tractor. The difference between the trailer and the tractor is that the tractor was acquired new in 1941, whereas the trailer was acquired second hand in 1942, was a 1936 model and therefore eight years old at the time it was destroyed.

When the policy covering this equipment was issued on October 29, 1943, the insured stated that the actual cost when purchased, including equipment, was $2000.

At the trial the parties stipulated that the list price of the trailer was $2820 and that there had been added thereto in the way of equipment and accessories amounting to $1376.50 bringing the total amount thereof to $4196.50.

However, this stipulation was placed in the record for the purpose of arriving at the ceiling prices upon the equipment. There is no evidence before the court showing that any of the accessories were placed upon said trailer subsequent to the purchase thereof in August 1942. If there is any presumption to be indulged with respect to the matter, I think it is to the effect that whatever equipment was on the trailer at the time it was destroyed, was placed there at the time it was purchased, and was included in the $2000. The insured had owned the trailer approximately eighteen months at the time of its destruction, and as heretofore stated, the undisputed testimony shows that it had been completely overhauled shortly prior to its destruction.

In view of the circumstances and the evidence in this case, this piece of equipment had an actual cash value at the time of its destruction as great as the purchase price paid for it in August 1942. The insured is entitled to recover from the insurer the actual cash value of $2000 less the sum of $44 as provided by the policy, or $1956.

The insured is entitled to recover for the loss of all of the equipment covered by

540

both policies, the sum of $4360 together with interest at 6% per annum from February 1, 1944.

██ The insured also seeks to recover damages and attorney's fees for vexatious refusal to pay. Immediately following the loss, the insured filed proof of loss in which he claimed the actual cash value of the property to be $7000, and that the amount of his loss was $5000. Subsequently the insured filed amended proofs of loss in which he claimed the actual cash value of the property to be $5533.36 and again fixed the amount claimed at $5000 which he represented as the replacement value of the property. This amount the insured refused to pay.

While the insurer was not justified in its position that its liability for loss through "Collision or Upset" for which it was liable to pay the actual cash value, was limited to $1000 on the tractor and to $800 on the trailer, there was a serious question as to the method of arriving at the actual cash value of the property. There was justification for a reasonable difference of opinion as to the actual cash value of the property because of the ceiling prices which had been placed on such property by the Office of Price Administration.

Under the circumstances I do not believe that the insurer was guilty of vexatious delay by refusing to pay the amounts demanded, for which it should be penalized, and the insured is not entitled to any amount as penalties or for attorney's fees.

██ At the time the insurer filed its petition for declaratory judgment in this court there existed between the parties an actual controversy, 28 U.S.C.A. § 400, as to the amount of the liability of the insurer, and it was entitled to institute and maintain such an action.

The petition for declaratory judgment was filed prior to the filing of the complaint of the insured to recover upon the insurance policies. Insured's complaint should be and is hereby dismissed at his cost, and the cost of this proceeding incident to the trial and to this finding and judgment should be taxed against the insurer Sun Insurance Office, Ltd., in the case of Sun Insurance Office, Ltd., a Corporation, v. John C. Rupp, an Individual, d/b/a Rupp Bros. Oil Company, No. 54.

Judgment ordered in accordance with above.