**Tommy CAMERON and Montgomery GMC Trucks, Inc., a corporation, Plaintiffs-Respondents,**

v.

**VIRGINIA SURETY COMPANY, Inc., a corporation, Defendant-Appellant.**

No. 8595.

Springfield Court of Appeals.

Missouri.

Dec. 29, 1967.

Donald E. Bonacker, Skelton & Bonacker, Springfield, for defendant appellant.

Gerald H. Lowther, James K. Prewitt, Henry W. Westbrooke, Jr., Miller, Fairman, Sanford, Carr & Lowther, Springfield, for plaintiffs-respondents.

HOGAN, Presiding Judge.

This is an action by the owner and the mortgagee of an insured diesel truck to recover a collision loss from the insurer. The plaintiffs had a verdict and judgment in the amount of $11,000.00, which the trial court reduced to $10,500.00 by remittitur. The insurer has appealed on the ground of error in the instructions, and in certain rulings made during the course of the trial.

Plaintiff Cameron bought the truck involved from the mortgagee, Montgomery GMC Trucks, Inc., in November 1964, and wrecked it on February 6, 1965. A lengthy period of negotiation followed before this action was filed. Some recitation of the relevant facts is necessary to an understanding of the issues involved, although by the time the case actually went to trial the sole matter at issue was the amount the insured was entitled to recover.

Plaintiffs' evidence, so far as material here, was that Cameron had paid $12,250.-00 for the truck. The purchase price was $10,200.00, and the additional sum represented "carrying charges." Mr. Cameron was of the opinion that the vehicle was worth between $10,000.00 and $11,000.00 immediately before the collision, and $400.-00 to $500.00 immediately afterward. The trailer, in his opinion, was worth $1,000.00 to $1,100.00 immediately before the collision, and "probably" $150.00 to $200.00 afterward.

Cameron testified that the insurer had made an offer of settlement in cash. This offer was based on a $7,450.00 value for the tractor, and he had rejected it because he considered the tractor was worth more. When the offer was made, the value of the trailer had been set at $975.00, which Cameron considered adequate. Cameron had also been offered a replacement tractor by the insurer. Plaintiffs' version of this offer of replacement was that the re-

placement was rejected because "it wasn't enough to cover the needs," the "needs" apparently being to use the truck in the employ of Mayflower Van Lines, whose specifications were "very rigid." Cameron said he had never seen the proposed replacement, and when it was offered the insurer had said nothing about a major overhaul. Cameron denied that the insurer had ever offered to take him to Nashville, Tennessee, to see the proposed replacement, or that it had offered to bring the replacement to Springfield, Missouri.

The insurer had the testimony of its representative, Mr. Ahles, and offered the deposition of a Mr. Ray Baucom, on whose lot at Nashville, Tennessee, the proposed replacement had been located. Mr. Baucom identified himself as "used truck manager" for a concern known as General Truck Sales, Inc., in Nashville, Tennessee. Mr. Baucom had had about 17 years experience in dealing with heavy equipment, and his job also occasionally involved appraising and valuing used trucks. In March 1965 Mr. Ahles, the insurer's representative, had asked Baucom to locate a replacement for Mr. Cameron. Baucom had had a unit on his lot with basically the same specifications at that time, and he considered its fair and reasonable market value to have been $7,000.00. The insurer did not request Baucom to hold this unit, and it was sold. Later, in August 1965, Baucom had again been asked to locate a replacement, and again he located one, "possibly better than the first." He again placed the value of the replacement tractor at $7,000.00. It was developed on cross-examination, however, that the second unit, without any repairs, would have been worth "somewhere in the neighborhood of $5,000.00, maybe $4,500.00," and the insurer proposed to do a complete overhaul on this vehicle before tendering it to the insured. Baucom estimated the value of the overhaul to have been $1,500.00 to $2,000.00. He went on to say that the repairs which were proposed consisted of "practically everything they do when they build the engine to start with."

Baucom was asked if he could honestly say what the value of the damaged tractor was when he had never seen it, and he answered that " * * * I * * * think there is a maximum on any used truck," and said that " * * * for the market condition at that time $7,000.00 would be a maximum figure" for a tractor such as the one described to him.

Mr. Ahles, the insurer's adjuster, testified primarily concerning the course of negotiation between him and the insured. Shortly after the loss was sustained, Mr. Ahles performed what he called a complete or near complete tear-down inspection of the damaged tractor, and determined that it was a total loss. Ahles then advised Cameron that the insurer could offer a cash settlement under the policy or attempt to locate a replacement. According to Ahles, the insured first talked about a cash settlement but later asked that the insurer locate a replacement. Mr. Ahles then took photographs of the damaged tractor and furnished specifications to Mr. Baucom so a replacement could be located. When Cameron refused the first replacement, Ahles offered him payment in money. This offer was $7,000.00 for the tractor and $975.00 for the trailer, less a deductible amount of $250.00 on each unit. This offer was also rejected.

In August 1965, the insurer's representative contacted Cameron's attorney and was advised that Cameron wanted a replacement unit. The circumstances of the insurer's offer at this time was that it would repair the proposed second replacement and tender it, if it was satisfactory to Cameron. Cameron rejected the second offer of replacement. Ahles also testified, without objection, that he intended to exercise the option given the insurer to pay what it would cost to replace the vehicle.

In rebuttal, the plaintiffs offered the testimony of Mr. H. P. Montgomery, the mortgagee corporation's president. The substance of Mr. Montgomery's testimony was that the kind of overhaul or repair proposed for the second replacement would

have cost at least $4,000.00, that the damaged tractor could not have been replaced for $7,000.00, and that an adequate replacement would have cost at least as much as Cameron had paid, that is, $10,200.00.

The insurer admits that the truck, both tractor and semi-trailer, was damaged by upset or collision as defined by its policy, and that the policy was in force when the vehicle was wrecked. Among other things, the policy provides for a $250.00 deductible amount on each collision loss, that for collision purposes the tractor and trailer are to be considered separate vehicles, and under the general heading "Conditions," states:

"14. Limit of Liability; Settlement Options; No Abandonment—Coverages D, E, F, G, H and I: The limit of the company's liability for loss shall not exceed either (1) the actual cash value of the automobile, or if the loss is of a part thereof the actual cash value of such part, at time of loss or (2) what it would then cost to repair or replace the automobile or such part thereof with other of like kind and quality, with deduction for depreciation, or (3) the applicable limit of liability stated in the declarations.

The company may pay for the loss in money or may repair or replace the automobile or such part thereof, as aforesaid, or may return any stolen property with payment for any resultant damage thereto at any time before the loss is paid or the property is so replaced, or may take all or such part of the automobile at the agreed or appraised value but there shall be no abandonment to the company."

■ Preliminarily, we must deal with two matters which the respondents say prevent a consideration of this appeal on its merits. Before the case was argued and submitted, the respondents filed a motion to dismiss the appeal on the ground that the appellant had not fairly and concisely stated the facts relevant to the questions presented in its brief as required by Rule 83.05, pars. (a) and (c), V.A.M.R. There is some merit in this motion, for the appellant's factual statement is argumentative and in many respects assumes there is no conflict in the evidence when there is. The penalty of dismissal is a drastic one, however, and we are fully convinced that the appellant made no conscious effort to distort the facts or evade the requirements of Rule 83.05. Though the factual statement in appellant's brief is inadequate, we are able to ascertain the facts determinative of the only real issue presented. The motion to dismiss the appeal is denied, and we will consider the substance of the appellant's points. Kirkpatrick v. Wabash R. Co., 357 Mo. 1246, 1250, 212 S.W.2d 764, 765–766 [1]. Likewise, the respondents contend that the appellant's objections to Instruction No. 2 on the measure of damages are not properly preserved for review because its assignment of error on motion for new trial was not specific enough. Conceding that it was incumbent upon the appellant to make some specific objection to Instruction No. 2 in the trial court in order to preserve error for review, Duffendack v. St. Louis Public Service Co., Mo.App., 365 S.W.2d 52, 54 [4], we have examined the appellant's assignments of error in its motion for new trial and consider them sufficient to preserve the only real question argued on this appeal, which is whether Instruction No. 2 properly defined the measure of damages for the jury.

■ For our purposes, the criticized instruction can be taken as stating two alternative guides by which to measure the amount of plaintiffs' recovery. Instruction No. 2, of which complaint is made, advised the jury that it would award the plaintiffs (1) such sum as it found to be the difference in the fair market value of the tractor and trailer in question immediately before and immediately after the collision, unless (2) it found that defendant elected to pay plaintiffs the replacement value of the tractor and trailer, and did find a replacement of like kind and quality, in which case its verdict would be for the cost of a replacement.

The appellant argues that Instruction No. 2 was prejudicially erroneous because it permitted the jury to find that the insurer did not exercise its option to replace the vehicle when the evidence conclusively shows that it did. We find no merit whatever in this contention. Though much proof was adduced concerning the two proposed replacements, the option to replace the vehicle was not really put in issue. The insurer never undertook to locate a replacement for the trailer; its efforts in that direction were limited to the tractor. As for the tractor, the insurer's evidence was, in net effect, that it first offered to pay cash or make replacement, as the insured chose. It then found a replacement which was refused, then offered the cash value of that replacement, and finally located a second vehicle which it offered to repair if the insured would accept it as a replacement of like kind and quality. We have considerable doubt that the policy authorizes the insurer to pay in part and replace in part. Globe & Rutgers Ins. Co. v. Prairie Oil & Gas Co., C.C.A. 2 Cir., 248 F. 452, 455 [2]; State Bank of Chilton v. Citizens' Mut. Fire Ins. Co., 214 Wis. 6, 252 N.W. 164, 166 [5]. Assuming it did, however, the insurer was required to exercise its option to replace in an unequivocal and unconditional manner, and it could not couple its election with an offer of compromise nor use it as a means of forcing a compromise settlement. Smith v. Farm Bureau, etc., Ins. Co. of Concord, 98 N.H. 420, 101 A.2d 778, 780 [3]; 46 C.J.S. Insurance § 1195, p. 131. In this case, the insurer's action cannot be construed as an election to replace the damaged vehicle.

Appellant's further objection to Instruction No. 2 is that it "ignores" the policy provision limiting the insurer's liability to the actual cash value of the vehicle at the time of loss, or the cost of a replacement, whichever is lesser. As developed in the brief, the appellant's point is that Instruction No. 2 improperly limits the jury's consideration of the evidence of the cost of a replacement by requiring the jury to find that the insurer elected to pay the cost of a replacement, and did find a replacement of like kind and quality. Going somewhat further, the appellant maintains that the jury should simply have been instructed to award plaintiffs the actual cash value of the vehicle or the cost of a replacement of like kind and quality, whichever was the lesser, less the deductible amounts and salvage value of each vehicle.

There is indeed some merit in this argument. The insurer's failure to exercise its option to replace the vehicle would not deprive it of the policy limitation on its liability, Stucker v. Travelers Indemnity Co., 77 S.D. 27, 84 N.W.2d 566, 568 [2], and the jury should not have been required to find that the defendant elected to pay the replacement value, and did find a replacement, as prerequisites to a consideration of the limitations on liability. To this extent the instruction required findings on extraneous issues, and was doubtless somewhat confusing and misleading. We further agree that the quoted policy provisions not only limit the insurer's liability, but fix the measure of damages, Wilson v. Motors Insurance Corporation, Mo.App., 349 S.W.2d 250, 255 [6] [7]; Home Ins. Co. of New York v. Tumlin, 241 Ala. 356, 2 So.2d 435, 437 [3, 4], though admittedly the authorities do not uniformly so hold when the damaged vehicle is a total loss, as it was in this case. Bickel v. Nationwide Mutual Insurance Co., 206 Va. 419, 143 S.E.2d 903, 905 [1] [2]. The instruction should clearly have confined plaintiffs' recovery to the lesser of the two alternative limits of liability, less the deductible amounts on each vehicle and the salvage or wreckage.

But assuming that the instruction does not follow the very language of the policy, and at least partially misstates the law, the question remains whether the defendant was materially prejudiced by the error. As indicated, we regard Instruction No. 2 as laying down two guides by which

to determine the amount of plaintiffs' recovery. The jury is told to award the difference in the fair market value of the damaged truck before and after the collision, that is, the diminution in value, or the cost of a replacement, providing it finds the insurer elected to pay the cost of a replacement and did find one. We find the statement of the first guide or alternative unexceptionable. Market value is at least one proper test of the actual cash value of an automobile, Anno., 61 A.L.R. 2d 711, § 6 [a], pp. 719–723, and an award of the *difference* in market value before and after the loss takes the salvage into account. See Jarnagin v. Queen Ins. Co. of America, Mo.App., 272 S.W. 1095, 1096 [3] [4]. Of course, the instruction should have taken the deductible amount in consideration, but the trial court recognized this in ordering a remittitur.

To determine whether the other guide given the jury was prejudicially erroneous, we must further examine the substance of the appellant's complaint and consider the evidence of the cost of a replacement. In essence, the appellant complains that because the jury was not plainly and clearly instructed on the law it returned a verdict based on the plaintiffs' evidence of the fair market value, rather than one based on the insurer's evidence of the cost of a replacement. As our recitation of the facts shows, plaintiffs produced a good deal of evidence dealing with the fair market value of Cameron's truck before and after the collision, and in rebuttal offered evidence that a replacement of like kind and quality would cost at least $10,200.00 in the Springfield, Missouri, area. Defendant offered evidence of the cost of a replacement at Nashville, Tennessee. Baucom, from whom the insurer proposed to obtain the replacement, testified that the value of a replacement vehicle was $7,000.00. In the course of his testimony, Baucom did say, in a very general vein, that "to me, for the market condition at that time, $7,000.00 would be a maximum figure," but there was no showing by the defendant of the

points of similarity and difference between the markets, if any, at Springfield, Missouri, and Nashville, Tennessee, nor was it demonstrated that plaintiffs' vehicle was of the type generally bought and sold at a more or less uniform price throughout the country, nor was the cost of transportation shown. Nor is Baucom's testimony like that discussed in Strickland v. Quality Building & Security Co., 220 Ark. 708, 249 S.W.2d 557, 558 [1–3], wherein the witnesses, though out-of-state dealers, were familiar with the local market. It is clear to us that Baucom's testimony was simply that a replacement could be bought for $7,000.00 at Nashville. He testified by deposition, and objection was made and overruled to this part of the deposition.

 In this respect, the record has a curious aspect. Though the only substantive issue on trial was the value of the damaged vehicle, which is generally to be determined as of the time and place of its taking or destruction, 22 Am.Jur.2d Damages, § 147, p. 212, the parties here deliberately chose not to show where the loss occurred, and only by indirection do we glean from the transcript that it occurred in the Springfield, Missouri, area. Ahles, the insurer's representative, testified wholly without objection that he "understood" it occurred "within a distance of a hundred miles" of Crane, Missouri, which is "just a short distance" from Springfield, Missouri. While this is far from satisfactory, clear proof of the location at which the collision occurred, even hearsay unobjected to may be taken in consideration in reaching a conclusion, Goodman v. Allen Cab Co., 360 Mo. 1094, 1100, 232 S.W.2d 535, 539 [4]; Vosburg v. Smith, Mo.App., 272 S.W.2d 297, 302 [9], and cases cited note 9, the parties otherwise treated Springfield, Missouri, as being the point at which the value of the damaged vehicle should be fixed, and we conclude that the evidence which the appellant claims was ignored was only evidence of replacement cost at a distant market, which would not in itself and without more be proof of its value in or near Springfield,

Missouri. Barton v. Farmers Ins. Exchange, Mo.App., 255 S.W.2d 451, 456 [4]; 22 Am.Jur.2d Damages, § 325, p. 426; 25 C.J.S. Damages § 88, p. 972. In short, the jury's verdict was in an amount well within the range of value supported by the competent evidence. Any error induced by the jury's lack of instruction on the deductible amount was ascertainable and susceptible to cure by remittitur, and we cannot say that the appellant was prejudiced because of the trial court's error in defining the measure of damages. Mercer v. Millers Mut. Fire Ins. Ass'n, Mo., 249 S.W.2d 402, 407; Blydenburgh v. Amelung, Mo.App., 309 S.W.2d 150, 153–154; Yankoff v. Allied Mutual Insurance Co., Mo.App., 289 S.W.2d 471, 475–476 [3]. See also LaPlant v. E. I. DuPont De Nemours and Company, Mo. App., 346 S.W.2d 231, 244.

■ The appellant has also raised two points dealing with rulings made during the trial. The insurer assigns error to the trial court's refusal to declare a mistrial when the insurer's representative was asked if he was aware that Cameron had signed a promissory note for $12,500.00 for the tractor. The witness did not answer the question. Cameron had testified without objection that he paid $12,500.00 for the truck, that $10,200.00 was the purchase price, and that the balance represented "carrying charges." Prior to trial the appellant had moved orally "to suppress the amount that is owed upon the chattel mortgage * * * for the reason that * * * any mention of it * * * would be highly prejudicial to the defendant." The court ruled that the amount of the mortgage would not be permitted in evidence. Subsequently, the question indicated was asked and the trial court quickly and properly admonished the jury to disregard the question and any inference to be drawn from the statement of the question. Appellant's point is that such evidence would have had a tendency to encourage or persuade the jury to award Cameron enough money to pay his debt, and quite likely that is true.

We are not convinced, however, that counsel's violation of the court's advance ruling was deliberate, nor are we as convinced as the appellant that such evidence, had it been admitted, would not have been merely cumulative of what had already been said. Except in unusual circumstances, an admonition to the jury to disregard evidence improperly admitted is sufficient, as we pointed out in Kirst v. Clarkson Const. Co., Mo. App., 395 S.W.2d 487, 499 [21], and in this instance the witness was not even allowed to answer the question. We consider the trial court's action appropriate and sufficient.

■ The appellant further says a mistrial should have been declared because the jury was allowed to see an "informational copy" of the policy in suit. Again, before the trial the insurer moved to suppress any evidence of the stated amounts of insurance on the face of the policy. The trial court ruled that the policy was admissible in evidence, and that counsel might read from the policy, except that the stated amounts might not be shown to the jury. The plaintiffs introduced the policy in evidence; the insurer used it in examining its representative Ahles to determine whether Ahles had sought to exercise the policy option to replace the damaged vehicle. Part of the policy provisions we have recited were read to the jury. Counsel for plaintiffs then proposed and undertook to show the policy to the jury for the purpose of showing the stated amounts of insurance because, as he said, "they have opened it up." The trial court advised counsel that it had previously ruled the stated amounts were not to be shown to the jury, and counsel for the plaintiffs desisted. The appellant argues here that the jury was prejudiced by having seen the stated amounts of insurance on the obverse side of the policy, but the record does not actually show what the jury saw nor read, and the trial court was convinced no prejudice had been worked. We have considered the record in this respect, and we think the incident complained of was not

prejudicial and was not a ground for mistrial.

Inasmuch as no prejudicial error appears in any of the respects briefed and argued before this court, the judgment is affirmed.

TITUS, J., concurs.

STONE, J., dubitante.