Truitt HOUNIHAN, Plaintiff-Respondent,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY OF BLOOMINGTON, ILLINOIS, Defendant-Appellant.

No. 8780.

Springfield Court of Appeals, Missouri.

May 5, 1969.

Harold D. Jones, Bock & Jones, New Madrid, for defendant-appellant.

James M. Reeves, Ward & Reeves, Caruthersville, for plaintiff-respondent.

HOGAN, Presiding Judge.

This is an action on the collision coverage provisions of an automobile insurance policy. Trial to a jury has resulted in a verdict and judgment for the plaintiff in the amount of $823.80, and the defendant has appealed. There is no dispute that the plaintiff's vehicle was damaged and that it was covered by the defendant's policy and that the defendant is liable under the policy. As the defendant puts the question in its brief, "[t]he only dispute and the only issue involved is the amount of damages recoverable under the terms of the * * * policy."

The relevant section of the insurance policy provides: [emphasis ours]

"COVERAGE G—Deductible Collision. To pay for loss to the owned automobile caused by collision but only for the amount of each such loss in excess of the deductible amount stated in the decla-

rations as applicable hereto. The deductible amount shall not apply if the collision is with another automobile insured with this company.

"*Limits of Liability—Settlement Options—Coverages D, D–50, F and G. The limit of the company's liability for loss shall not exceed the actual cash value of the property*, or if the loss is of a part thereof the actual cash value of such part, at time of loss, *nor what it would then cost to repair or replace such property with like kind and quality*, less depreciation and deductible amount applicable. The limit of liability for loss to all wearing apparel and luggage of one or more persons shall not exceed $200 for each accident."

The insured vehicle was a 1960 GMC pickup truck which the plaintiff used on his farm in Pemiscot County. Plaintiff bought the truck in 1960 for $2,050, less a trade-in allowance of $850, and used it continuously up to November 5, 1966. There was evidence tending to show that at the time it was damaged, the vehicle was in better than average condition. The plaintiff produced service records showing that it had been continuously maintained in good working order, and several witnesses testified to the effect that the truck was "quite a bit better than average," or was in "very good" running condition, or that it was "a real good clean truck." A Mr. Monan, who sold the truck to the plaintiff, testified that in 1963 the motor block had been replaced with a "case-hardened" block, which had as the witness recalled, 8,000 miles on it.

On the other side of the ledger, so to speak, it was shown that the speedometer reading on the truck at the time it was wrecked was 111,222 miles, that it had been used continuously in the fields "to haul water to the cotton pickers, and pull a trailer once in a while," and that it had been damaged before November 5, 1966, once by a fire which had "done some burning underneath the hood," and once in some kind of accident which had required replacement of a door. Plaintiff's service records indicate that the truck had required repair on 37 occasions between June 25, 1962, and November 3, 1966, and that these various repairs had cost $1,213.87.

Plaintiff produced an assortment of more or less qualified witnesses who testified to the reasonable market value of the truck at the time it was damaged. Bernard Brockett, Emerson Smith, Jr., Robert Garrett and and M. D. Wilson were farmers who had seen the insured truck. In one measure or another, all were familiar with the value of farm trucks, and they all testified that in their opinion, the vehicle had a fair market value of $1,000 immediately before the accident. Mr. Hounihan, the plaintiff, testified that the reasonable market value of his pickup immediately before the accident was $1,000. Mr. House, an automobile salesman who had seen and driven the truck shortly before it was damaged, stated that he would say its fair market value was "about a thousand dollars." Mr. Monan, who was "trying to trade for the car (sic) about ten days or two weeks before it was wrecked," testified that the fair market value of the truck " * * * would run between—oh, a thousand fifty and nine and a half."

For the defendant, a Mr. Farr, who sold new and used cars and trucks in an adjoining county, testified that the reasonable market value of a truck like the plaintiff's, in good condition, would be "five to six hundred dollars." A Mr. Owens, a salvage dealer, testified that the reasonable market value of the truck after it was damaged was "about a hundred and sixty-five dollars." Mr. Owens was asked to express his opinion of the fair market value of the truck before it was damaged, based on his inspection afterward, but he was not permitted to answer.

The defendant also had the evidence of a Mr. Clevenger, an adjuster. Mr. Clevenger testified that he had inspected the insured vehicle shortly after the accident, and had found it to be a 1960 model GMC one-half

ton pickup with a speedometer reading of 111,222 miles. It was in slightly below average condition. Mr. Clevenger was asked the "Red Book" value of the vehicle, and the "Red Book" was produced, but the average value listed was excluded on the ground that it was "wholly immaterial." Mr. Clevenger was shown to have considerable experience in dealing with automobiles, both as a salesman and as an adjuster, and he stated that in his opinion, the reasonable market value of the insured truck prior to the collision was $535. On this evidence, as indicated, the jury returned a verdict for the plaintiff in the amount of $785, plus interest in the amount of $38.80.

The first point for discussion is the defendant's claim that the trial court erred in excluding competent evidence of the cost and location of a replacement vehicle. In this connection, the defendant produced two witnesses, a Mr. Farr and Mr. Clevenger, defendant's adjuster. Mr. Farr, an automobile salesman of considerable experience, was asked to give his opinion of the reasonable market value, in November of 1966, of a 1960 GMC one-half ton pickup truck, straight transmission, which had something in excess of a hundred thousand miles on it. Over objection, Mr. Farr was permitted to state that in his opinion, the reasonable market value of such a vehicle would be "[a]n average, five to six hundred dollars." Subsequently, Mr. Farr was shown a snapshot, which he identified as a picture of a 1960 model GMC pickup truck, six cylinder, straight transmission. He testified further that the vehicle in the picture was located "on our used car lot" in Kennett, Missouri, in December of 1966. Mr. Farr was then asked if Mr. Clevenger had "contacted" him "relative to such a vehicle," and he answered, "[h]e did." Counsel then inquired "what the price was that you offered to take for that?" An objection was sustained. Counsel then made an offer of proof, as follows:

"Your Honor, we offer to prove by this witness, who has identified Defend-

ant's Exhibit 3, that this 1960 GMC pickup truck which he had on the lot available for sale in the period of time that we're talking about here today, that it was in good condition, and that he offered to take $480.00 for same.

"THE COURT: All right, the offering will be denied."

Counsel then pursued the same line of inquiry with Mr. Clevenger, the adjuster, using the same snapshot. When the court questioned the relevancy of that line of questioning, counsel made the following offer of proof:

"Your Honor, we offer to prove by this witness that the truck shown on Defendant's Exhibit 3 is a 1960 GMC pickup truck of the same make and model as the one involved here, and it was in as good or better condition than the one we have involved here, and that in December of 1966 that the witness could have purchased this as a replacement vehicle from Mr. Farr, who testified previously, for $480.00, going to show the market value of the truck.

"THE COURT: Let the record show that the offering is denied, and that the exhibit is excluded."

On a number of occasions, our courts have held that policy provisions similar to those quoted and emphasized, when not invalidated by statute, limit the insurer's liability and fix the maximum recovery which can be had under the policy. Cameron v. Virginia Surety Company, Mo. App., 423 S.W.2d 219, 223 [5,6]; Wilson v. Motors Insurance Corporation, Mo.App., 349 S.W.2d 250, 255; Williams v. Farm Bureau Mutual Ins. Co. of Mo., Mo.App., 299 S.W.2d 587, 588 [1] and cases cited note 2. On the strength of these cases, and others, the defendant argues that it was entitled to show that the cost of a replacement was less than the amount claimed by plaintiff to be the diminution in value, and we agree. We will further indulge the defendant's tacit assumption that the "cost"

of a replacement is synonymous with the "market value" of a replacement, though that may not always be true. See Crowley v. North British & Mercantile Ins. Co., D.C.S.C., 70 F.Supp. 547, 554 [5], aff'd, 4 Cir., 164 F.2d 550.

It does not follow, however, that the defendant's offer of proof was improperly rejected. What the defendant set out to prove, as we understand it, was that a replacement of like kind and quality could be purchased in the open market for a sum less than the diminution in value claimed by the plaintiff. What it actually offered was proof that a single similar vehicle had been offered for sale for the sum of $480, as counsel finally put it " * * * to show the market value of the truck." Of course, the market value of a chattel may be shown by evidence of actual current and similar sales on the market, provided it is a chattel for which there is a market, Rosenblatt v. Winstanley, Mo. App., 186 S.W. 542, 543 [3, 4]; McCormick, Evidence, § 166, p. 348 (1954); 29 Am.Jur.2d Evidence, § 389, p. 441, but an unaccepted offer, as an isolated transaction, does not show value, Jones v. Farm Bureau Mutual Insurance Company, Mo.App., 284 S.W.2d 11, 13–14 [1]; Sheldon v. Brace Motor Co., Mo.App., 210 S.W.2d 110, 113 [3, 4]; 29 Am.Jur.2d Evidence, § 389, p. 441, and in any case proof of a single sale is not sufficient to establish a market value. Harmon v. Stuyvesant Ins. Co., 170 Mo. App. 309, 315, 156 S.W. 87, 89 [3]; Mc-Anarney v. Newark Fire Ins. Co., 247 N.Y. 176, 159 N.E. 902, 904, 56 A.L.R. 1149; 1 Sedgwick, Damages, § 244, p. 495 (9th ed. 1912). In our view, the defendant's offers of proof were properly refused.

Another point briefed and argued by the defendant is that the court erred in giving Instruction No. 3 on the measure of damages because Instruction No. 3 submits a tort measure of damages, rather than the measure of damages provided for in the language of the policy. Again the defendant bases its argument on our rulings in Cameron v. Virginia Surety Company, supra, 423 S.W.2d at 223 [5, 6] and Wilson v. Motors Insurance Corporation, supra, 349 S.W.2d at 255, that policy provisions similar to those quoted not only limit the insurer's liability, but fix the measure of damages.

Instruction No. 3 is M.A.I. 4.01 slightly modified. The defendant does not complain of the modification; its argument is that Instruction No. 3—M.A.I. 4.01—is too broad and general for use in a contract case, and that it ignores the policy limitation on the insurer's liability.

Though the point is properly raised and is before us, we need not rule on it directly. We have doubt that it was ever necessarily error to submit the issue of damages in the language of M.A.I. 4.01 in a contract case, even before the Missouri Approved Instructions were adopted. Brunner v. Stix, Baer & Fuller Co., 352 Mo. 1225, 1241, 181 S.W.2d 643, 652; Norman v. McLelland, Mo.App., 354 S.W.2d 906, 912 [8, 9]. Were it necessary to rule directly on the point, we believe we would have to hold, in light of current authority, that the use of M.A.I. 4.01 was obligatory in this case, even though it sounds in contract and even though the measure of plaintiff's damages is the diminution in value or the cost of replacement, whichever is lesser. Jack L. Baker Companies v. Pasley Manufacturing and Distributing Co., Mo., 413 S.W.2d 268, 272–274 [4] [5, 6] [7]; Stamm v. Reuter, Mo.App., 432 S.W.2d 784, 786–787 [1, 2].

As indicated, however, it. is unnecessary for us to consider and discuss the impact of M.A.I. on our rulings that the quoted policy provisions fix a measure of damages. The basis of the defendant's complaint of Instruction No. 3 is that it was deprived of the policy limitation on its liability. In other words, the defendant's argument is that the jury should have been instructed to award the plaintiff the diminution in value of the truck or the cost of a replacement, whichever was lesser. The whole of the evidence considered, there was

proof of the reasonable market value of the insured vehicle before and after it was damaged, but the only evidence tending to show the cost of a replacement was that offered by the defendant, which as we have just held was properly refused. A cardinal principle of the M.A.I. is that the jury should not be instructed on any theory of recovery or defense which is not supported by the evidence, M.A.I. 1.02, p. 7; Hardy v. St. Louis-San Francisco Railway Company, Mo., 406 S.W.2d 653, 659 [6], and on the record before us, there was simply no evidentiary basis for an instruction on the cost of a replacement. We conclude that the giving of Instruction No. 3 was not error in this case.

███ Defendant's final point has to do with the final argument of plaintiff's counsel. In this court, the defendant argues that the trial court erred in permitting plaintiff's counsel to argue the "Golden Rule" to the jury, and in permitting plaintiff's counsel to argue that the jury should use its own experience in rendering a verdict. We find no such point in defendant's motion for new trial. Allegations of error with respect to improper argument must be specifically presented in a motion for new trial in order to be preserved for appellate review, and since defendant's motion contains no assignment of error parallel or similar to the objection made here, the point is not before us. Marler v. Pinkston, Mo., 293 S.W.2d 385, 388 [5,6]; Williamson v. St. Louis Public Service Co., 363 Mo. 508, 521, 252 S.W.2d 295, 303 [16].

The judgment is affirmed.

STONE, J., concurs in result.

TITUS, J., concurs.