William C. MYERS, Jr., Plaintiff-Respondent,

v.

AMERICAN INDEMNITY COMPANY, Defendant-Appellant.

No. 8925.

Springfield Court of Appeals, Missouri.

Aug. 11, 1970.

John R. Martin, Joplin, for defendant-appellant.

Richard M. Webster, Myers, Webster & Perry, Webb City, for plaintiff-respondent.

HOGAN, Judge.

This is an action on the collision coverage provisions of an automobile insurance policy. Trial to the court has resulted in a judgment for the plaintiff in the sum of $1,763. The defendant appeals, maintaining that the trial court incorrectly calculated the amount of plaintiff's loss, and that

judgment for not more than $1,263 should have been entered. It is conceded that the plaintiff's vehicle was damaged, that it was covered by the defendant's policy, and that the defendant is liable.

On July 30, 1968, plaintiff was the sole owner of a 1964 Mercury Colony Park station wagon. It was insured against loss by collision by the defendant's policy. Mr. Myers had purchased the car in June 1964, and it was in excellent condition. Plaintiff testified that his car was a nine-passenger station wagon, equipped with a luggage rack, power windows, power brakes, and power steering. At the time of the accident, the vehicle had been driven about 50,000 miles. The details of the accident were not developed; Mr. Myers stated only that "the left front was caved in [and] the left side on the rear was dented."

Plaintiff's testimony was that he had asked defendant to repair the car, since it had been in good condition and he did not want to sell or trade it. The defendant refused on the ground that repair would cost more than $2,000, not including "transmission and things like that." Some negotiation followed, and on September 26, 1968, Mr. Myers executed a Proof of Loss. This particular proof, under the heading "The Actual Cash Value," contains four printed boxes for completion. The first is "Cash Value." Plaintiff stated this to be $1,835. The second box is labeled "Whole Loss." This was stated to be $2,335. The third box shows the amount deductible—$100, and the fourth, "Amount Claimed Under This Policy," is filled in with the figure $1,835. On October 8, 1968, defendant advised Mr. Myers that his proof of loss was "not acceptable" and returned it with a reminder of their "initial offer of value of $1700.00 subject to deductible and salvage." This action followed.

Upon trial, Mr. Myers testified that in his opinion the reasonable market value of his car, immediately prior to the accident, was $2,335. However, a few questions later, Mr. Myers was shown the proof of loss and was asked to explain "specifically the 'cash value' and the 'item of whole loss,' how you arrived at these two figures." Plaintiff answered: "The actual cash value was determined by a discussion primarily with automobile dealers. There was no vehicle anywhere to be had that was even of the same nature or even close to the kind of car that I was driving. Consequently, most car dealers would give me no estimate at all. * * *" Plaintiff had had a conversation, however, with a Mr. Cole, from whom he had purchased the vehicle. Plaintiff was then asked:

"Q. After this conversation, did you arrive at an opinion as to the value or a price which could be obtained for that car had it not been damaged?

A. Yes, Sir. $1835.00 was the value that I arrived at.

Q. All right. The thing that I do not understand is the item of whole loss.

THE COURT: What is the figure on the whole loss?

A. The whole loss was $2335.00, and I arrived at that figure in two ways. At that time, I wanted the car repaired. The cost of repairs plus those items which were left open I estimated would be around $2300.00 to repair the car and take care of the open items. Another way that I came to the whole loss was that after talking with the authorized dealer, he advised me that if the car had not been repaired, that I would have been allowed that much for a trade-in."

Plaintiff was also interrogated about the salvage value of his car, and he testified that he believed he had received $495 for the salvage on a trade. Mr. Myers also had evidence to show that he had been charged $23 for towing and storage. Consequently, he computed his loss to be $2335 less $495, plus $23, less $100 deductible, a total of $1763.

Defendant had the evidence of a Mr. Bill Berry, "sales manager" for a concern

known as Triangle Olds. Mr. Berry had extensive experience in appraising automobiles, but he had never seen the plaintiff's vehicle. Mr. Berry's description of his method of appraising "second-hand" automobiles was, as he put it, "[y]ou kind of use your own judgment a little bit and use the book as a guide and you subtract for what it would take to put it in shape or add if the car is extra clean or sharp." The "book" to which Mr. Berry referred was the N.A.D.A. manual. According to that book, plaintiff's automobile had a retail value of $1,460, to which $100 could be added because it was in good condition. From counsel's description of the car—Mr. Berry was asked a sort of hypothetical question concerning its value—the witness was able to "say around $1700.00 would be close."

On this evidence, the trial court found that plaintiff had sustained a "whole loss" in the amount of $2,335, that the actual cash value of the vehicle immediately prior to the collision was $1,835, that plaintiff had incurred $23 expense in preserving the automobile, and that the amount of $100 should be deducted from plaintiff's loss as provided by the policy. Judgment in the sum of $1,763 was entered for the plaintiff.

On this appeal, the parties have briefed and argued a number of points, but despite that fact, and with deference to counsel, the case involves nothing more complicated than the computation of a collision loss, and for the purposes of this opinion it is unnecessary either to set out the policy provisions at length or to consider the parties' several contentions separately. We do not agree with the plaintiff's argument, advanced without citation, that the policy provisions are unusual or non-standard; in fact, the policy language material in this case seems to have been taken bodily from the so-called 1963 Standard Family Automobile Liability Policy. See Risjord and Austin Automobile Liability Insurance Cases, Standard Provisions, p. 181 et seq. (1964).

■■■ By the terms of the policy before us, the insurer agrees to indemnify the policyholder for loss caused by collision to the policyholder's automobile, in the amount of each such loss in excess of the stated deductible amount, which in this case is $100. The "limit of liability" provisions are that the defendant's liability for loss shall not exceed: (1) the actual cash value of the automobile; (2) nor "what it would then cost to repair or replace the property * * * with other of like kind and quality," (3) nor the applicable limit of liability stated in the declarations. Generally, the policy obligates the insurer to pay the policyholder the actual cash value of the automobile or the cost of a replacement, whichever is lesser, within the limit of liability stated in the declarations, if the insured vehicle is lost or destroyed, cf. Morreale v. National Fire Insurance Co. of Hartford, 7 Cir., 298 F.2d 96, but plaintiff's vehicle was neither lost nor totally destroyed. The "limit of liability" provisions found here are the same in substance and effect as those considered by this court in such cases as Hounihan v. State Farm M.A.I. Co. of Bloomington, Ill., Mo.App., 441 S.W.2d 58; Wilson v. Motors Insurance Corporation, Mo.App., 349 S.W.2d 250, and Williams v. Farm Bureau Mutual Ins. Co. of Mo., Mo.App., 299 S.W.2d 587. Though in Cameron v. Virginia Surety Company, Mo.App., 423 S.W.2d 219, and Wilson v. Motors Insurance Corporation, supra, this court referred to the "limit of liability" provisions as "fixing the measure of damages," it is more precise and accurate to say that such provisions fix the maximum obligation of the insurer for loss of or damage to the insured automobile; they do not fix any rule for determining the amount of the policyholder's loss. Anno., 61 A.L.R.2d 711, 714, § 2[a] (1958); 44 Am.Jur.2d Insurance, § 1636, pp. 546–547. The proper measure of damages in this case—the measure of the plaintiff's loss—is the difference between the reasonable market value of the automobile immediately before the casualty and immediately there-

after. Langdon v. Koch, Mo.App., 393 S.W.2d 66, 69 [5]; Hood v. M.F.A. Mutual Insurance Company, Mo.App., 379 S.W.2d 806, 812 [9]. Automobile collision insurance, like other property insurance, is merely a contract of indemnity, Moore v. American Ins. Co. of City of Newark, New Jersey, 81 Ga.App. 219, 58 S.E.2d 197, 201 [1], and the insurer's only obligation, so far as damage to the vehicle is concerned, was to indemnify the plaintiff for actual loss and damage sustained.

■ Here, by the policy terms, the total value of the insured vehicle was its "actual cash value," and obviously the first step in computing plaintiff's loss is to find the "actual cash value" of his car. With certain exceptions not material here, "actual cash value" means "the sum of money the insured goods would have brought for cash, at the market price, at the time when, and place where, they were destroyed." Sun Ins. Office v. Rupp, D. C.Mo., 64 F.Supp. 533, 537–538. Mr. Myers testified, as we understand the substance of his testimony, that the market value of his automobile, had it not been damaged, was $1835. Mr. Myers also had two other figures in mind, the cost of repair, which was "around $2300," and a "trade-in" value, which was $2335. One of the questions presented by counsel is whether evidence of a "trade-in" value is evidence of the "actual cash value" of a chattel. We are inclined to think not, see 25 C.J.S. Damages § 83, p. 915, but we need not so rule. An actual sale of property proves its value, but a single, unaccepted offer does not,

Hounihan v. State Farm M.A.I. Co., supra, 441 S.W.2d at 62, and the single, unaccepted "trade-in" offer was not evidence of market value here. The evidence in the record establishes a total, "actual cash" value of $1835.

■ Plaintiff's evidence of the diminution in value is vague. Mr. Myers testified in this respect that he worked out two deals, one a "cash" deal and the other a "salvage" deal. He believed what he received was $495 for the salvage. The record indicates, and we take it to mean, that he received consideration equal to $495 for the damaged automobile when he traded. That is the only figure we have to indicate the value of the automobile after it was damaged, plaintiff in his testimony computed his loss using that figure, and with some reserve we accept it as evidence of the value of the damaged vehicle. The diminution in value of the chattel is therefore $1,835 minus $495, or $1,340. From this sum, $100 must be deducted. Plaintiff's loss because of damage to his vehicle was $1,240. Towing charges were covered here, and in any event plaintiff was obligated to protect the damaged vehicle. His towing and storage charges are to be allowed. These amount to $23. Plaintiff's whole loss, for which he should be indemnified, is $1,240 plus $23, or $1,263, for which sum a judgment should have been entered. The judgment is reversed and the cause is remanded, with directions to enter a judgment for the plaintiff in the sum of $1,263.

TITUS, P. J., and STONE, J., concur.