**Mary Susan BEIS and John Beis, Plaintiffs–Appellants,**

v.

**Dr. W.P. Clement DIAS, Defendant– Respondent.**

No. 18172.

Missouri Court of Appeals, Southern District, Division One.

July 16, 1993.

Motion for Rehearing or Transfer Denied Aug. 5, 1993.

Application to Transfer Denied Sept. 28, 1993.

Kevin K. Anderson, Anderson & Milholland, Harrisonville, for plaintiffs-appellants.

Kent O. Hyde and William C. Love, Harrison, Tucker & Hyde, Springfield, for defendant-respondent.

SHRUM, Judge.

In this medical malpractice action, plaintiff Mary Susan Beis alleged that the defendant, a physician licensed to practice in Missouri, negligently injured her while performing a hysterectomy. Mary Sue's husband, John,[1] sued the defendant for loss of consortium. A jury returned a verdict in favor of the defendant, and the plaintiffs appeal. We affirm.

In their four points relied on, the plaintiffs raise two issues that are preserved for our review. They charge that the trial court erred by:

(1) Excluding evidence that "prevented [them] from proving that defendant was not the expert specialist in general surgery he claimed to be"; and

(2) Permitting defense counsel to argue over objection to the jury that it had an opportunity to "correct" the "most litigious society in the world."

The plaintiffs raise two additional allegations of improper closing argument, neither of which is preserved for review because neither was raised in the plaintiffs' new trial motion.

We first discuss Points I and IV, which have been preserved; we then briefly address the points not preserved. Facts are recited where relevant in our discussion of each point on appeal.

### Point I: Rejection of Evidence

In their first point relied on and throughout their argument thereunder, the plaintiffs allege that the defendant made an "affirmative" and "unqualified" claim to be "a specialist in general surgery." With that allegation as their factual underpinning, the plaintiffs then argue they should have been permitted to impeach the defendant concerning this purported claim of expertise by showing that he had twice failed the Oklahoma medical licensure examination before passing it on his third attempt and had on ten occasions taken written examinations—without passing—as part of his failed efforts to become certified by the American College of Surgery.[2]

On the morning of trial, the court sustained the defendant's motion in limine in which he requested the plaintiffs be prohibited from introducing evidence "That Defendant Dias has failed to pass the board certification exam."

At trial, Dr. Keith Wright[3] testified without objection that he "has seen a lot of surgeons work both at K.U. Medical Center

---

1. For convenience, where we refer individually to the plaintiffs, we use their forenames as used at trial.

2. The plaintiffs provide us with no transcript page citations to identify testimony that the defendant held himself out to be a "specialist" in "general surgery." In his brief the defendant challenges as incorrect the plaintiffs' repeated allegations that he affirmatively and unqualifiedly claimed to be a "specialist" in "general surgery." He points out that he did nothing more at trial than testify that he was licensed to practice medicine in Missouri, Colorado, and Oklahoma and testify about his education, training, and professional experience. In their reply brief, the plaintiffs point to a discovery interrogatory by which the defendant was asked to "identify all medical specialties which you practice or have practiced during your career...." The defendant responded, "General Surgery." The question and answer were not read to the jury.

3. Wright was Mary Sue's primary care physician who assisted the defendant in performing the hysterectomy.

in Kansas City, at all the hospitals, Research Hospital, Baptist Hospital, Children's Mercy and Truman Hospital, and Dr. Dias has as good a technical skills as any of the surgeons that I saw.... He's as good as any surgeon with their technical skills in the metropolitan area."

After Wright's testimony, the plaintiffs sought to cross examine him about the defendant's certification examination failures. The trial court denied the plaintiffs' request.

Later in the trial, the defendant testified about his education, training, professional experience, and license to practice medicine in Missouri. He stated he was not board certified in any specialty, and he offered no evidence of his intellect, grades, ability to pass examinations, special licenses, or academic honors.

After the defendant's direct examination, the plaintiffs made an offer of proof by questioning him about his two Oklahoma licensure examination failures and his inability to pass the board certification examination. The trial court did not depart from its earlier ruling on the motion in limine.

The plaintiffs now contend the trial court erred in refusing to allow them to question Wright about the defendant's certification examination failures and the defendant about his failures on the certification and licensure examinations.

■ As a general rule, determining the relevance of proof offered at trial is for the sound discretion of the trial court and is not ordinarily reviewable upon appeal. *Midwest Materials Co. v. Village Development Co.*, 806 S.W.2d 477, 495[24] (Mo.App.1991). The trial court's wide discretion extends to determining whether evidence on collateral matters should be admitted. *Id.* at 495[25]. " 'The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before [it] and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration.' " *Oldaker v. Peters*, 817 S.W.2d 245, 250 (Mo.banc 1991) (quoting *Richardson v. Colonial Life*

*& Accident Ins. Co.*, 723 S.W.2d 912, 915[4] (Mo.App.1987)).

"The test for relevancy of evidence is whether an offered fact tends to prove or disprove a fact in issue or corroborates other relevant evidence." *Oldaker*, 817 S.W.2d at 250. "Relevancy is that relationship between the offered fact and fact in issue to such a degree that the truth of the offered fact makes probable the existence of the fact in issue." *Danneman v. Pickett*, 819 S.W.2d 770, 772[1] (Mo.App.1991).

■ Not all logically relevant evidence is automatically admissible. In *Edgell v. Leighty*, 825 S.W.2d 325 (Mo.App.1992), the court stated:

"[T]he sole fact that evidence is logically relevant does not require its admission; the evidence must also have some probative force over and above logical relevancy.... If evidence pertaining to collateral matters brings into a case new controversial matters which would result in confusion of issues ... or cause prejudice wholly disproportionate to the value and usefulness of the offered evidence, it should be excluded."

*Id.* at 327 (quoting *Conley v. Kaney*, 250 S.W.2d 350, 353[3, 4] (Mo.1952)).

Here the defendant testified not only as a witness to the events that gave rise to the plaintiffs' claims but also as an expert witness. The plaintiffs' position appears to be that because the defendant testified as an expert, his inability to pass board certification examinations and his two Oklahoma licensure examination failures were legitimate subjects of inquiry. They contend this evidence had such a bearing on the defendant's professional expertise that the trial court abused its discretion in not permitting the cross examination they sought.

As their only authority under Point I, the plaintiffs cite *Kinser v. Elkadi*, 674 S.W.2d 226 (Mo.App.1984). Reliance on *Kinser* is misplaced. In that medical negligence case, defendant Elkadi, a physician, complained about the way plaintiffs' counsel argued evidence regarding "hospital restrictions" that Elkadi was under during part of the time he practiced medicine in

Springfield, Missouri. *Id.* at 236. The trial court ruled that the hospital restrictions could be argued, but only as a circumstance affecting his credentials as an expert witness. *Id.* Elkadi did not question whether the evidence should have been admitted; rather, his point on appeal was that the Kinsers' attorney inappropriately argued the evidence and invited the jury to speculate as to why Elkadi's privileges had been restricted. *Id.* Unlike in *Kinser*, the issue in the case at bar is whether the trial court erred in disallowing evidence, not whether the evidence was appropriately argued.

■ In an attempt to apply *Kinser* to the instant case, the plaintiffs direct our attention to the following passage from that opinion:

> We agree with the trial court that the privileges a hospital grants a physician to practice in certain fields of medicine or perform certain surgical procedures are legitimate subjects of inquiry when the physician testifies as an expert witness. The existence, or absence, of hospital privileges in the locale where the physician practices bears on his professional expertise, as do his education, licensing, certifications, experience, and the like.

674 S.W.2d at 236[12]. We do not read *Kinser* as authority for the proposition that where a physician, testifying as an expert, offers evidence about restrictions placed on his practice at a hospital, the trial court must permit the opposing party to cross examine him about the reasons for those restrictions. Likewise, in the case before us, where the defendant, as an expert, testified he was not board certified, *Kinser* does not require the trial court to permit questions about why he was not board certified.

■ Moreover, the defendant did not open himself to cross examination about failed examinations. His testimony that bore directly on his qualifications as an expert was limited to his education, training, professional experience, and license to practice medicine in Missouri. The defendant testified he was not board certified in any specialty, and he offered no evidence of his intellect, grades, superior ability to pass examinations, special licenses, or academic honors that might raise an issue of his test-taking abilities.

■ Issues to be resolved by the jury included whether the defendant was negligent and, if so, whether that negligence caused Mary Sue's injuries. Although in their point relied on the plaintiffs limit their complaint to the trial court's refusal to allow them to challenge the defendant's qualifications as an expert, in the argument portion of their brief under Point I the plaintiffs attempt to connect the defendant's "intellectual inability to pass medical test examinations" to the negligence alleged against him. For the evidence to have been used for this purpose at trial would have been improper. Evidence of the defendant's performance on the various examinations, even if logically relevant (and we do not say it was relevant), had no probative force regarding the defendant's alleged negligence. *See Edgell*, 825 S.W.2d at 325. A physician's inability to pass certification and licensure examinations does not make probable his negligent performance of a specific procedure. *See Danneman*, 819 S.W.2d at 772[1]. *See also Moran v. North County Neurosurgery, Inc.*, 714 S.W.2d 231 (Mo.App.1986), where the court held that a physician's admission that he had been convicted of some unidentified felonies was not relevant to whether he was negligent in treating a patient. *Id.* at 233[5].

■ Wright's testimony did not open the door to questions about the defendant's test-taking abilities. Without objection, he testified favorably about the defendant's technical skills as a surgeon, his comments based on his personal observation of the defendant's work and his observations of surgeons in the Kansas City area. The defendant's test-taking ability was not relevant to Wright's personal observations of the defendant's performance of surgery. Cross-examination of Wright regarding the defendant's ability to take exams was properly rejected.

We conclude the trial court did not abuse its discretion in excluding evidence about the defendant's examination record. Point I is denied.

The plaintiffs' three remaining claims of error focus on defense counsel's closing arguments. Only one of those points, IV, was preserved for our review.

### Point IV: "Send a Message" Closing Argument

In their fourth point the plaintiffs charge that the trial court committed prejudicial error in overruling an objection to the following closing argument by defense counsel.

[MR. HARRISON]: *[Y]ou have a golden opportunity here to help correct one of the most litigious societies—the most litigious society in the world.* You have an opportunity—

MR. ANDERSON [defense counsel]: Your Honor, I object to counsel's argument that these people are going to correct some wrong with the world. I think that's clearly outside the issues and it's an attempt to taint the jury.

THE COURT: Overruled.

MR. HARRISON: You have an opportunity here to take the burden off of Dr. Dias's back and place it where it belongs. These people should not recover any money whatsoever. *We cannot encourage this type of activity.* Folks, look, I don't deny and I've never tried to deny and I told you this up front, that she had complications develop as a result of the surgery. But they are accepted risks of the surgery. They are known risks of this surgery and unfortunately, it happened to this lady. But we are here to determine whether or not Dr. Dias in any way was negligent. Did he fall below an acceptable standard of care with reference to his treatment, his care, his surgery of this woman? (Emphasis ours.)

The plaintiffs aver that by permitting such comments the trial court allowed the defendant to argue matters to the jury that were beyond the issues and evidence in the case. They characterize the comments italicized in the above-quoted portion of the transcript as a prejudicial "send a message" argument.

"Missouri courts have long shown displeasure with 'send a message' arguments in which punitive damages are not sought." *Pierce v. Platte–Clay Elec. Co-op, Inc.,* 769 S.W.2d 769, 779[14] (Mo.banc 1989). "When the message argument becomes the theme of the entire closing, it constitutes reversible error." *Id.* *See Smith v. Courter,* 531 S.W.2d 743, 748[6] (Mo.banc 1976); *Fisher v. McIlroy,* 739 S.W.2d 577, 582[12] (Mo.App.1987). Yet, from long experience appellate courts recognize that trial courts are better positioned to assess the amount of prejudice injected by admittedly improper arguments. *Pierce,* 769 S.W.2d at 779; *MFA Inc. v. Dettler,* 817 S.W.2d 658, 663 (Mo.App.1991). Having only the cold record on appeal, appellate courts of this state uniformly uphold trial court's determinations of the prejudice injected by "send a message" arguments. *Pierce,* 769 S.W.2d at 779.

In this case, even if the italicized part of the argument recited above is an improper "send a message" comment—a decision we do not make—it was not the ongoing theme of the defendant's closing remarks. After objection was made to the comment about the jury's "golden opportunity" to correct "the most litigious society in the world," defense counsel moved from that argument, even though the objection was overruled, and began to argue that evidence of a patient's complications did not prove negligence.

By their motion for a new trial the plaintiffs gave the trial court the opportunity to gauge the prejudicial effect, if any, of the argument. With its superior opportunity to appraise the impact of the argument on the jury, we accord the trial court broad discretion in this area of closing arguments. *Dettler,* 817 S.W.2d at 663[4]. *See Midwest Materials,* 806 S.W.2d at 492[18]. With these principles in mind and for the reasons given above, we conclude that no abuse of trial court discretion was shown. Point IV is denied.

*Points II and III: Issues Not Preserved*

■ The plaintiffs' second and third points relied on, alleging improper closing argument, raise issues not preserved for review because the issues were not raised in the plaintiffs' new trial motion. Rule 78.07 requires that in jury tried cases "allegations of error to be preserved for appellate review must be included in a motion for a new trial." Furthermore, allegations of error with respect to counsel's argument must be specifically presented to the trial court in a motion for new trial. *Marler v. Pinkston,* 293 S.W.2d 385, 388[5] (Mo. 1956); *Hounihan v. State Farm Mut. Auto. Ins. Co.,* 441 S.W.2d 58, 63[10] (Mo. App.1969). Because the plaintiffs' motion contains no assignment of error comparable to those found in Points II and III, these points are not before us. *See Hounihan,* 441 S.W.2d at 63[11]. Had they had been raised in the new trial motion, the allegations of error would fail for reasons we now discuss.

In their second point, the plaintiffs urge that we convict the trial court of prejudicial error when it did not *sua sponte* correct the following portion of the closing argument by the defendant.

[Defendant's counsel]: [Y]ou saw three doctors cross the stand: Dr. Dias, Dr. Weigel, and Dr. Wright. You got a chance to look into their eyes, you got a chance to see their demeanor, you got a chance to listen to what they said and to see how they acted. Dr. McAfee—I'm not telling you not to give *weight* to his testimony, because that was discussed up front. In other words, you're to give as much weight to a deposition testimony as you are to a witness on the stand. *The problem is, you don't get to see the person.* (Emphasis added.)

Pointing to § 492.400,[4] RSMo 1986, and Rule 57.07,[5] the plaintiffs contend that the italicized portion of the above-quoted argu-

ment was an impermissible misstatement of the law and that the trial court had a duty to stop, restrain, or purge such misstatement once it commenced.

■ The plaintiffs did not object when the defendant's lawyer made his comment regarding the weight to be given to deposition testimony. The law is well settled that when a party fails to object to an allegedly erroneous argument at the time it is made, the claim of error is foreclosed from consideration. *Peters v. Henshaw,* 640 S.W.2d 197, 201 (Mo.App.1982) (citing *Mueller v. Storbakken,* 583 S.W.2d 179, 186[6] (Mo. banc 1979)). "[A] timely and sufficient objection must be made so that the trial court can take corrective measures to remove the prejudice." *Dettler,* 817 S.W.2d at 662 (citing *Gilmore v. Union Constr. Co.,* 439 S.W.2d 763, 766 (Mo.1969)). By failing to make a timely objection during trial, the plaintiffs waived their objection. *Blevins v. Cushman Motors,* 551 S.W.2d 602, 616[25] (Mo.banc 1977); *Dettler,* 817 S.W.2d at 662.

■ Attempting to avoid application of the foregoing principles, the plaintiffs cite us to *Langdon v. Wight,* 821 S.W.2d 508 (Mo.App.1991), and *White v. Gallion,* 532 S.W.2d 769 (Mo.App.1976), and argue that the trial court had a duty to correct the alleged misstatement of law *sua sponte.* While both cases state the long established rule that "misstatements of law are impermissible" in closing arguments and an "absolute duty, as opposed to a discretionary duty, rests upon a trial judge to restrain such arguments," neither requires the trial court to correct the error *sua sponte. Langdon,* 821 S.W.2d at 511[1]; *White,* 532 S.W.2d at 771[4].

■ Unlike the case at bar, the misstatements of law in *Langdon* and *White* were brought to the trial court's attention

---

4. § 492.400 states in pertinent part, "[D]epositions ... may be read and used as evidence in the cause in which they were taken, as if the witness were present and examined in open court...."

5. Rule 57.07(a) states in part, "[A]ny part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had proper notice thereof...."

by timely objection. *Langdon,* 821 S.W.2d at 511[1]; *White,* 532 S.W.2d at 771[4]. Therefore, *Langdon* and *White* teach that where in closing argument an instance of misstated law *is timely objected to,* there is no leeway for the exercise of judicial discretion. *White,* 532 S.W.2d at 771. In such instance the duty rests upon the judge to restrain and purge such argument. *Langdon,* 821 S.W.2d at 511[1]. *See also Fahy v. Dresser Industries, Inc.,* 740 S.W.2d 635, 641[9] (Mo.banc 1987), *cert. denied,* 485 U.S. 1022, 108 S.Ct. 1576, 99 L.Ed.2d 891 (1988). *Langdon* and *White* do not stand for the proposition, nor are we aware of any rule, that a trial court has an affirmative duty to correct misstatements of law in closing argument in the absence of objection by opposing counsel. For this reason, even if included in the new trial motion, the error identified in Point II fails because it was not timely objected to during trial.

 In Point III the plaintiffs contend that defense counsel was permitted to make the following closing argument over objection: "[D]efendant [is] such a good surgeon that [I] would want [him] to be [my] own personal physician." [6] The plaintiffs charge that the defense counsel's argument was irrelevant and prejudicial because it injected a false issue into the case, that issue being an evaluation and stamp of approval by defense counsel of his client's conduct. They claim that defense counsel's endorsement of the credibility and ability of defendant, being based on beliefs outside the evidence, were not subject to cross-examination; therefore, the trial court's denial of the objection constituted prejudicial denial of a fair trial. However, "[d]etermining the prejudicial effect of final argument is a matter within the discretion of the trial court, and the trial court's judgment on that matter will not be disturbed unless there was an abuse of discretion."

*Hoover's Dairy, Inc. v. Mid–America Dairymen,* 700 S.W.2d 426, 434–35 (Mo. banc 1985). We have examined the record and find no abuse of discretion. For this reason, Point III would likewise fail even if properly preserved.

Because the trial court did not abuse its discretion in excluding evidence regarding the defendant's licensure and certification examination failures or in assessing the prejudicial effect of the defendant's closing argument, we affirm the trial court judgment.

PARRISH, C.J., and CROW, P.J., concur.

---

6. The record reveals that the argument did not occur as the plaintiffs paraphrase it in their point relied on. Instead, there were two separate closing argument comments of which the plaintiffs complain. The first comment was "withdrawn" by the defendant's lawyer immediately following the plaintiffs' objection and before the trial court had an opportunity to rule upon the objection. The plaintiffs sought no further action or ruling at that point. Later, near the end of defense counsel's argument, where he said, "I would want this man to be my doctor," the plaintiffs made only a general objection that the argument was "not relevant." That objection was overruled.