**Kathy D. LANGDON,
Plaintiff/Appellant,**

v.

**Sheldon WIGHT, Defendant/Respondent.**

**No. 59188.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 10, 1991.

Motions for Rehearing and/or Transfer to Supreme Court Denied Jan. 27, 1992.

David M. Duree, Reinert & Duree, St. Louis, for plaintiff/appellant.

James J. Wilson, Anne C. Buechler, St. Louis, for defendant/respondent.

GRIMM, Presiding Judge.

Plaintiff Kathy Langdon appeals from an adverse judgment in this jury-tried malicious prosecution action. We reverse and remand.

She alleges two points of error. First, the "trial court erred by overruling plaintiff's objections to defendant's closing argument that the testimony of plaintiff's witness ... was entitled to less consideration because it was by video deposition instead of by live testimony...." We agree. An implication that plaintiff's witness was less credible because she testified by deposition is not allowable comment on the witness's appearance or behavior.

In her second point, plaintiff claims the "trial court erred in overruling plaintiff's objection to defendant's closing argument that defendant may have been 'set-up' with respect to the arrest and ... the reference to prior claims against defendant American Bank...." We disagree. Defendant's argument that he may have been set up is a legitimate inference from the facts presented at trial. Regarding defendant's reference to prior claims against American Bank, plaintiff's objection was sustained and no further relief was requested. Plaintiff received all the relief requested.

## I. Background

Plaintiff and her husband purchased a van in 1986. Initially, plaintiff and husband made monthly payments. According to husband's testimony, in early 1987, bank agreed to accept three-months of payments once every three months. Three-month payments were made and accepted on February 27, June 16, and September 25, 1987.

Husband further testified that in late November, 1987, bank asked husband to make payments each two months and to make the October–November payment. Husband understood he had until December 4 to make that payment. According to husband, bank did not mention repossessing the van.

On the other hand, a bank officer testified plaintiff's account was delinquent. In early September, the officer told plaintiff or husband that their payment was three

months past due; plaintiff or husband promised to promptly bring the account current. The officer testified he told them that payments were due on a monthly basis and he expected them to be paid monthly. The September payment was made only after numerous calls from the bank officer.

The bank officer testified that on November 25, he called plaintiff's husband about the account's delinquency. He advised husband the van would be repossessed on November 30 if the account was not current by that time. The payment was not made and the van was repossessed.

Husband asked the bank to return the van, but bank refused absent payment of the entire loan balance. Plaintiff phoned the bank and told an employee that she and husband had left money hidden in an umbrella in the van, as well as their children's Christmas presents. Bank refused to return the contents of the van unless plaintiff agreed to turn over the keys. After the phone conversation, plaintiff called the St. Louis police department and asked for their assistance in recovering the personal property in the van.

On December 8, 1987, plaintiff, accompanied by a friend, drove to the bank to retrieve the personal property. Before arriving, plaintiff phoned the St. Louis police department and informed them of her intent. Upon arrival, plaintiff spoke with employees outside the bank. Defendant and other St. Louis police officers were present. Defendant and a bank employee went to retrieve the personal property from the van. Plaintiff claims they were unable to find certain items she and husband had left in the van, including the money.

About this time, plaintiff said a bank employee asked her to sign a receipt stating that all the items she and husband had left in the van were returned to her. Plaintiff refused. Plaintiff and defendant differ as to what happened next: plaintiff claims that she began to cry and defendant became abusive towards her. Defendant contends that plaintiff became "quite agitated ... [and caused] a substantial scene." Subsequently, defendant arrested plaintiff.

Defendant drove plaintiff to the police station. He prepared a summons charging her with peace disturbance and ordering her to appear in court on February 9, 1988. Plaintiff appeared with counsel on February 9, 1988, only to learn the charges had been dropped.

Plaintiff's friend, who accompanied her on her trip to the bank, testified by video deposition at the trial. Her testimony basically supports plaintiff's version of what occurred at the bank.

During closing argument, defendant's counsel commented on the credibility of the witnesses at trial and stated that friend "like the other witnesses ... didn't come in here and appear before you." Plaintiff's counsel objected that the statement was improper argument, but his objection was overruled. Later in her argument, defendant's counsel repeated this theme, saying friend "did not come in here and state that here and look [defendant] in the eye." Plaintiff's counsel objected and again was overruled. Also in closing argument, defendant's counsel argued that plaintiff might have tried to set up defendant, and cause him to arrest her. Defendant's counsel pointed out that (1) plaintiff tape-recorded phone conversations with bank officers, (2) plaintiff and husband hired an attorney before she went to the bank, (3) plaintiff took down the names of persons she spoke with from the police department and bank, and (4) she took a friend along as a witness on December 8. Defendant's counsel also mentioned that bank had been sued for false arrest and malicious prosecution.

Plaintiff objected to both statements by defendant's counsel: that defendant may have been set up, and that plaintiff had sued bank. Plaintiff's objection to the latter was sustained, but her objection to defendant's setup argument was overruled.

## II. Deposition Testimony

■ In her first point, plaintiff alleges the "trial court erred by overruling plaintiff's objections to defendant's closing argument that the testimony of plaintiff's witness ... was entitled to less consideration because it was by video deposition

instead of by live testimony...." Plaintiff contends that defendant's argument amounted to "a misstatement of law because ... testimony presented by deposition is to be given the same consideration as testimony presented by live witnesses...."

In *Jones v. St. Louis–San Francisco Ry. Co.*, 287 Mo. 64, 228 S.W. 780, 785 (1921), the trial court refused to instruct the jury that the affidavit testimony of an absent witness "is entitled to and should be given the same weight and credit [as if] said witness were personally present...." Our supreme court held that the instruction "properly declared the law.... The refusal of the court to give same constituted reversible error." *Id.*

In *Empire Plow Co. v. Berthold & Jennings Lumber Co.*, 237 S.W. 137, 140 (Mo. App.E.D.1922), this court affirmed the use of a jury instruction which essentially advised the jury that "the deposition of witnesses should be treated as though the witnesses had been before the jury testifying." The court stated, "This is our statute law." *Id.* at 140. The court noted that "[u]nder our statute law (section 5467, R.S.Mo.1919), depositions of witnesses are used as evidence in all respects as though the witnesses orally testified in open court." *Id.* at 139–40. Our current statute and Supreme Court Rules provide for the same. § 492.400, RSMo 1986; Rule 57.07.

Here the deposition was a video tape deposition, as authorized by Rule 57.03(c). The jury was able to see and hear the witness testify. In such a situation, there is even less reason to give a deposition less weight and credit than if the witness personally appeared.

Defendant argues, however, that he was merely making allowable comment on the "appearance, attitude and behavior of the witness" as recognized in MAI 2.01 [1978 Revision]. Defendant's argument is suspect, especially in light of the fact that the witness testified by video deposition. As stated in *United States v. Tunnell*, 667 F.2d 1182, 1188 (5th Cir.1982), a video deposition makes it possible for the trier of fact "to note [the witness's] attitude reflected by his motions, facial expressions, demeanor and voice inflections."

Here, defendant argued to the jury that the witness "didn't come in and appear before you" and "did not come in here and state that here." These comments did not address the witness's "appearance, attitude and behavior," but the witness's absence.

Defendant's comments in closing argument imply that deposition testimony is per se inferior to live testimony. This clearly mischaracterizes Missouri law. "[M]isstatements of law are impermissible during closing argument, and a positive and absolute duty, as opposed to a discretionary duty, rests upon a trial judge to restrain such arguments." *Titsworth v. Powell*, 776 S.W.2d 416, 422 (Mo.App.E.D.1989).

However, defendant argues that even if the trial court erred in overruling plaintiff's objections, the error was not prejudicial because plaintiff failed to make a submissible case of malicious prosecution. Defendant argues that plaintiff failed to prove that defendant instigated the prosecution of plaintiff. We disagree.

Defendant admits he arrested plaintiff, and he caused the summons and complaint to be issued. Defendant's signature appears on the summons. Paul Goeke, a bank employee, was listed as the victim of the peace disturbance; however, Goeke was unaware that he had been named as victim at the time of the arrest. Goeke testified he did not ask to be named as victim, nor did he recall asking that any charges be brought against plaintiff. Goeke said he believed defendant made the decision to arrest plaintiff on his own.

### III. Plaintiff's Setup Argument

Plaintiff's second point is poorly worded, confusing, and arguably does not comply with Rule 84.04(d). Plaintiff alleges

the trial court erred in overruling plaintiff's objection to defendant's closing argument that defendant may have been "set-up" with respect to the arrest, and the cumulative effect of defendant's closing argument with respect to the "set-up" statement, the reference to the prior

**512**

claims against defendant American Bank, and the argument that [friend's] deposition testimony should be given less consideration than the testimony of live witnesses was prejudicial to plaintiff, denying plaintiff a fair trial.

■ From the argument portion of the brief, we discern plaintiff is appealing two separate instances where the trial court overruled objections to statements made by defendant's counsel. In closing argument, defendant's counsel twice mentioned that plaintiff had sued bank for malicious prosecution. The first time, plaintiff did not object. The second time, plaintiff objected. The trial court sustained the objection. No other relief was requested. Plaintiff cannot complain on appeal when she received all the relief she requested. *State v. McIlvoy*, 629 S.W.2d 333, 340 (Mo.banc 1982).

■ Plaintiff also objected to defendant's argument that defendant "might have been set up." The trial court overruled this objection. Plaintiff argues that "[t]here was no pleading raising this as a defense and there was no evidence from which the jury could find ... that [defendant] had been 'set-up'."

Plaintiff cites no cases requiring defendant to plead his setup argument as a defense and we find none. As to whether the argument was supported by the facts in evidence, we recognize that

> in closing argument, counsel is afforded wide latitude to suggest inferences from evidence and the trial court similarly has broad discretion to determine if a particular line of argument is proper. (citation omitted). The trial court is in the best position to appraise the consequence of argument, and the appellate court may intervene only if it concludes that the trial court has abused that discretion.

*Titsworth*, 776 S.W.2d at 420.

Here, the trial court did not abuse its discretion. The evidence of plaintiff's actions before going to the bank was sufficient to support the inferences defendant argued. Point denied.

The judgment of the trial court is reversed and the cause is remanded.

SATZ and CRANDALL, JJ., concur.