Philip J. **ROBERTSON** and Patricia A. **Robertson,** Respondents,

v.

**CAMERON MUTUAL INSURANCE COMPANY,** Appellant,

and

**Kaw Transport Company,** Respondent.

Philip J. **ROBERTSON,** et ux., Appellants,

v.

**CAMERON MUTUAL INSURANCE COMPANY,** Respondent,

and

**Kaw Transport Company,** Respondent.

Nos. WD 46798, WD 46851.

Missouri Court of Appeals, Western District.

June 8, 1993.

443

George Edwin Proctor, Jr., Kansas City, for Cameron Mut. Ins. Co.

James D. Boggs, Kansas City, for Philip and Patricia Robertson.

Robert Allen Horn, Kansas City, for Kaw Transport Co.

Before FENNER, P.J., and SPINDEN and SMART, JJ.

FENNER, Presiding Judge.

Appellant, Cameron Mutual Insurance Company (Cameron), appeals the finding of the Circuit Court of Platte County, Missouri, granting Respondents/Cross–Appellants' Motion for New Trial with regard to Cameron. The trial court found that the jury's verdict in favor of Cameron was against the weight of the evidence. Respondents/Cross–Appellants, Philip and Patricia Robertson (the Robertsons), cross-appeal alleging error on the trial court's part in refusing to sustain an objection made during the closing argument of Respondent, Kaw Transport Company (Kaw), and in approving certain verdict directing instructions.

As a brief background, this personal injury lawsuit arose out of an automobile accident that occurred on June 29, 1989, on Route J in Platte County, Missouri. While driving southbound on Route J from Weston to Platte City, Missouri, the Robertsons' car was struck by a car driven by Deedra Stoneking, who was driving northbound on the same road and had crossed the center line. The Robertsons contended that the negligent operation of a truck was responsible in part for their injuries. The evidence was disputed as to whether the truck was a "phantom vehicle" resulting in liability of the Robertsons' uninsured motorist carrier, Cameron, or whether the truck was operated by Kaw, an I.C.C. regulated carrier. Certain witnesses to the accident had identified a Kaw placard on the truck.

In their amended petition, the Robertsons prayed for judgment against Kaw should the jury determine that the truck was owned and operated by Kaw, and prayed for judgment against Cameron should the jury determine that the truck was an unidentified motor vehicle, or a "hit and run" motor vehicle, as defined by the uninsured motorist provision contained in the policy issued by Cameron to the Robertsons. The trial took place on July 6th and 7th of 1992, and the jury found in favor of both defendants, Kaw and Cameron. On August 25, 1992, the trial court entered judgment in favor of Kaw and Cameron and against the Robertsons.

The Robertsons filed a Motion for New Trial alleging, in part, that the jury's verdict was against the weight of the evidence. The trial court entered an order on September 1, 1992, overruling the Robertsons' motion with regard to Kaw, but sustaining the motion with regard to Cameron. The trial court found that the jury's verdict in favor of Cameron was against the weight of the evidence and that the Robertsons should be granted a new trial with regard to their claims against Cameron. Cameron appeals this finding.

## CAMERON'S APPEAL

The facts relevant to Cameron's appeal are as follows: The accident described above occurred at approximately 10:00 p.m. on a hilly curve on Route J, a two-lane road. The Robertsons were heading southbound on Route J, and a woman named Audra Leatherbury was driving behind the Robertsons by a few car lengths. Deedra Stoneking was approaching the Robertsons in the northbound lane. Behind Stoneking's vehicle, there were three motorcycles. Dan Harmon was riding the motorcycle closest to Stoneking's vehicle, followed by John Bucher, who was riding with his daughter, Michelle, and Aaron Robinson, who was riding with Bucher's wife, Reta. Alec Johnson, an emergency medical technician, was travelling northbound, a substantial distance behind the motorcycles. Johnson did not actually witness the acci-

dent, but stopped at the scene of the accident to render assistance.

The cause of the accident is in dispute in that several witnesses testified that a truck caused the accident while Leatherbury claims that no truck was involved and that Stoneking's vehicle just drifted over the center line and struck the Robertsons' vehicle. The testimony adduced at trial included the following: Philip Robertson has no memory of the accident due to amnesia and, consequently, cannot remember whether a truck was involved. He testified that just prior to the accident he and his wife, Patricia, were enjoying a conversation about buying a home and were not aware of other vehicles on the road. Patricia Robertson testified that, as they approached the collision scene, she did not recall who was behind their vehicle or in front of it because she and her husband were engrossed in conversation. Thus, she does not remember whether a truck was involved in the collision.

Deedra Stoneking, in her deposition,[1] stated that she was driving toward Weston on Route J and there was a curve ahead of her. Around the curve, coming toward her, was a truck on her side of the road. She moved out of the way, hit the embankment, and lost control of her car, hitting the Robertsons' car in the other lane. She does not remember seeing the Robertsons' car; all she remembers is that she hit something and was spinning. Stoneking described the truck as having a black cab and silver tanker, but she was unable to see any markings on the truck. According to her testimony, the truck never stopped and just left the scene of the accident.

Audra Leatherbury, a witness to the accident, testified that she was driving just a few car lengths behind the Robertsons' vehicle when she saw Stoneking's vehicle coming northbound and starting to cross over the center line slowly. Leatherbury stated that Stoneking's vehicle veered into the Robertsons' vehicle and that there was no truck in front of the Robertsons' vehi-

cle. She testified that the two cars ended up on opposite sides of the road, with the Robertsons' vehicle turned upside down. She further testified that not only did she not see a truck, but she also did not see any motorcycles. However, Leatherbury stated that, at the scene of the accident, she heard some people talking about a truck. When she said that she never saw any truck, the people looked at her like she did not know what she was talking about.

John Bucher, in his deposition, stated that he and four others were proceeding on Route J on their motorcycles, heading toward Weston. They were a few car lengths behind Stoneking. Bucher stated that, as they approached the curve where the accident occurred, a truck was coming toward them on their side of the road so that they had to go onto the shoulder of the road to avoid being hit by the truck. Robertsons' vehicle, he stated, was coming behind the truck and was hit by Stoneking's vehicle. Bucher, however, was not able to actually see whether the truck ran Stoneking's vehicle off the road because he had lost sight of Stoneking's vehicle for a few seconds.

Bucher described the truck as an "International Eagle pulling a tanker." He stated that there was a big KAW emblem on the tanker. Bucher further described the truck as dark-colored with bright yellow, red, and orange stripes. According to Bucher, he was so close to the truck that he could "reach out and touch it." Bucher also stated that the truck never stopped at the accident.

Both Reta Bucher and Aaron Robinson stated in their depositions that there was a truck coming toward them on their side of the road as they approached the curve where the accident occurred. Reta Bucher stated that she was able to read the KAW emblem on the truck. Aaron Robinson, however, was not able to identify anything on the truck and only remembered that it was a dark tanker truck.

1. Stoneking's deposition was read to the jury, as were the depositions of John and Reta Bucher. and Aaron Robinson.

Alec Johnson, the emergency medical technician who was travelling a good distance behind the motorcycles, arrived at the accident scene by happenstance. He testified that about ten to thirty seconds before arriving at the accident scene, he saw a truck coming in the opposite direction. At the accident scene, he remembered telling bystanders that he saw a truck.

Trooper Terry Day, of the Missouri State Highway Patrol, was responsible for investigating the accident. Trooper Day testified that, when he arrived at the scene of the accident, he learned about the existence of a tractor trailer truck from statements taken from witnesses at the scene and statements made by Stoneking. Trooper Day stated that the truck was described to him as "a black conventional truck pulling a silver tank trailer."

As is relevant to Cameron's appeal, the trial court instructed the jury that if they made a finding that the Robertsons sustained injury as a result of a negligently operated truck that was unidentifiable and left the scene of the accident, they must return a verdict in favor of the Robertsons and against the Robertsons' uninsured motorist carrier, Cameron. Alternatively, the jury was instructed that they must return a verdict in favor of Cameron if they did not believe that a truck was involved at all in the accident.

Cameron argues on appeal that the trial court erred in granting the Robertsons' motion for new trial because the jury's verdict in favor of Cameron was not against the weight of the evidence in that the substantial evidence supports the position that Stoneking, an insured driver, was the sole and exclusive cause of the accident and that she was not forced into the Robertson vehicle by a truck. Cameron further argues that the trial court abused its discretion in weighing the same evidence one way for Cameron and another way for Kaw, because the substantial evidence supports the jury's threshold determination that Stoneking was the sole cause of the accident thus relieving both defendants of liability. For the trial court to have grant-

ed a new trial against Cameron and not Kaw, Cameron argues, required the trial court to apply the same evidence of Stoneking's negligence inconsistently and prejudicially as to the two defendants.

The trial court has great discretion in granting a new trial on the ground that the verdict is against the weight of the evidence, and the appellate court will affirm such grant of a new trial unless there is a manifest abuse of discretion by the trial court. *Courtney v. City of Kansas City*, 775 S.W.2d 269, 272 (Mo.App.1989) (citations omitted). The standard of review to be applied by the appellate court is limited to a determination of whether there is substantial evidence sufficient to support a verdict in the moving party's favor. *Id.* In the granting of a new trial, no abuse of discretion will be found if the record discloses substantial evidence to support a verdict for the party awarded the new trial. *Carboline Co. v. B.C.D. Co.*, 712 S.W.2d 453, 454 (Mo.App.1986).

In the case at bar, four witnesses to the accident stated that they saw a truck coming toward them on the wrong side of the road, causing them to have to take evasive action. Only two, however, were able to identify any markings on the truck. As mentioned above, Stoneking stated that the truck ran her off the road and caused her to lose control of her vehicle, resulting in the accident at issue. Alec Johnson, although not a witness to the accident, stated that he saw a truck about thirty seconds before arriving at the accident scene. The evidence indicating negligence on the part of an unidentified truck was substantial evidence sufficient to support the trial court's decision to grant a new trial in favor of the Robertsons. We do not find any abuse of discretion on the trial court's part.

Cameron also contends that the trial court abused its discretion in weighing the same evidence one way for Cameron and another way for Kaw, because the substantial evidence supports the jury's threshold determination that Stoneking was the sole cause of the accident thus relieving both defendants of liability. Cameron argues

that for the trial court to have granted a new trial against Cameron and not Kaw required the trial court to apply the same evidence of Stoneking's negligence inconsistently and prejudicially as to the two defendants.

As previously stated, the trial court is accorded great discretion in granting a new trial on the ground that the verdict is against the weight of the evidence. We will not disturb the trial court's decision absent an abuse of discretion.

■ In the instant case, the trial court sustained the Robertsons' Motion for a New Trial with respect to Cameron, but overruled the motion with respect the Kaw. Having reviewed the record, we find that the trial court's ruling was supported by substantial evidence. While several witnesses confirmed that there was a negligently operated truck involved in the accident, only John and Reta Bucher were able to identify the truck as a Kaw truck. The others could not identify any markings on the truck. The trial court was free to give more weight to the statements of the witnesses who were unable to identify any markings on the truck. Furthermore, John Bucher's deposition testimony contained several inconsistencies.

It is apparent to us that there was substantial evidence to support a verdict in favor of the Robertsons and against Cameron. The substantial evidence reveals that there was a negligently operated truck involved in the accident. The evidence, however, is less clear as to whether the truck was a Kaw truck. Thus, the trial court was within its discretion in granting a new trial against Cameron and not Kaw.

We deny Cameron's arguments on appeal.

### ROBERTSONS' CROSS–APPEAL

In their cross-appeal, the Robertsons argue that the trial court erred in overruling the objection of counsel for Cameron on a misstatement of law made by Kaw in its closing argument. The Robertsons contend that the argument by counsel for Kaw that deposition testimony is per se inferior

in credibility to live testimony, by virtue of the language in Instruction Number 1, modeled after MAI 2.01, which instructs the jury to consider the "appearance, attitude and behavior" of the witness, was error and prejudicial to the Robertsons.

■ Before addressing the merits, we note that where several parties are entitled to object, an objection made by only one party will not inure to the benefit of a party not joining in the objection, for purposes of preservation of the objection for appeal. *T.S. v. P.S.,* 797 S.W.2d 837, 841 (Mo.App.1990). Where plaintiffs did not object to closing argument of defense counsel during trial, any alleged improper argument is to be reviewed only as plain error. *Chong Kee Min v. Wun Sik Hong,* 802 S.W.2d 171, 176 (Mo.App.1991); Rule 84.-13(c). The plain error rule, which is rarely applied in civil cases, is reserved for situations where a manifest injustice or miscarriage of justice has occurred. *Simpson v. Revco Drug Ctrs.,* 702 S.W.2d 482, 487 (Mo.App.1985). A necessary prelude to the plain error rule is that the error complained of has engendered hatred, passion, or prejudice. *Id.*

The Robertsons have failed to preserve this argument for review in that counsel for the Robertsons did not make an objection during trial to Kaw's allegedly improper statements in closing argument. Only counsel for Cameron made an objection. The Robertsons cannot get the benefit of Cameron's objection for purposes of preserving the objection for review. However, we will review for plain error.

■ The trial court is in the best position to appraise the consequence of a closing argument, and the appellate court may intervene only if it concludes that the trial court has abused its discretion. *Titsworth v. Powell,* 776 S.W.2d 416, 420 (Mo.App. 1989). In closing argument, counsel is afforded wide latitude to suggest inferences from the evidence, and the trial court similarly has broad discretion to determine if the particular line of argument is proper. *Id.* Misstatements of the law, however, are impermissible during closing argument, and a positive and absolute duty rests upon

**448**

the trial judge to restrain such arguments. *Id.* at 422.

In *Langdon v. Wight*, 821 S.W.2d 508, 511 (Mo.App.1991), the court held that the trial court committed reversible error by allowing remarks in defendant's closing argument which implied that videotaped deposition testimony was per se inferior to live testimony, as such remarks clearly mischaracterized Missouri law. Under Missouri law, depositions of witnesses are used as evidence in all respects as though the witnesses orally testified in open court. *Id.* (citations omitted). The court found that "[a]n implication that plaintiff's witness was less credible because she testified by deposition is not allowable comment on the witness's appearance or behavior." *Id.* at 509.

In *Langdon*, the defendant argued that he was merely making allowable comment on the "appearance, attitude and behavior of the witness" as recognized in MAI 2.01. *Id.* at 511. The court found defendant's argument to be suspect, especially in light of the fact that the witness testified by video deposition. *Id.* at 511. Defendant's counsel, during closing argument, had argued to the jury that the witness "didn't come in and appear before you," and that the witness "did not come in here and state that here and look [defendant] in the eye." *Id.* at 510. Plaintiff's counsel objected to these arguments, but the trial court overruled the objections. *Id.* at 510. The appellate court, in finding defendant's comments to be impermissible misstatements of the law, stated that these comments did not address the witness's "appearance, attitude and behavior," but the witness's absence. *Id.* at 511.

In the case at bar, counsel for Kaw argued, in his closing argument:

Now, the instructions and what I wanted to tell you about goes back to this Instruction Number 1 that you got the other day. It kind of helps you out in trying to figure out what evidence—how do I sort out this evidence. Well, it tells you.

It tells you that "After the openings statements, the plaintiffs will introduce evidence. After that, the defendants may introduce evidence and there may be rebuttal evidence after that. The evidence may include the testimony of witnesses who appear personally in court, the testimony of witnesses who may not appear personally but whose testimony may be read to you, and exhibits such as pictures, documents, and other objects." That's the evidence.

What does it tell you—you [sic] can do with that evidence? How do you judge the credibility of a witness? How do you determine whether you believe a witness or not? It tells you here in Instruction Number One.

"In considering the weight and value of the testimony of any witness, you may take into consideration the appearance, attitude, and behavior of the witness," let's stop right there. "The appearance, attitude and behavior of the witness." The only person who ever said it was a KAW truck, as identified in their Interrogatory answers, was John Bucher.

*Did you get an opportunity to weigh his testimony in light of his appearance, attitude or behavior? No, because he wasn't here. You didn't get a chance to look at him, to see him* (emphasis added).

At this point, counsel for Cameron objected to "the improper argument." In response to this objection, the court stated, "The jury will keep in mind that the statements of counsel or the arguments of counsel is [sic] not evidence. The objection is overruled." Counsel for Kaw continued his closing argument as follows:

What I'm saying is that the person who identified it as a KAW truck this says in order to be able to weigh the testimony and the value you should give that testimony, some of the things you can consider are his appearance, his attitude and his behavior. Now, if you don't see the person, you don't know what they look like. You don't know how they would have acted on the stand.

Who did you see? People that were live that you saw, one person came all the way from Illinois, the fellow that

saved his life. He made it here to the trial. He sat right there in the witness stand. He told you what he thought and what he saw and what he had done. And, you were able to judge by his appearance and I'll tell you he was very credible. He convinced me. He saved his life, absolutely. And, he also told you, "I saw a truck out there that night, but I couldn't identify if it was a KAW truck or not." He couldn't even identify what kind of trailer it had. So, you were able to judge his testimony and the credibility of his testimony.

And, then Audra Leatherbury, she came into the courtroom.... She said, "I saw the whole accident right in front of me. It happened right in front of me. I was right there behind the Robertson vehicle and I saw it. And, there wasn't a truck that had ran Stoneking off the road. I saw it all." And, she came and you could sit and watch her and try to decide for yourself was she telling the truth or did she not know what she was talking about. You had the opportunity to do that. You could judge the credibility of her statement.

Deedra Stoneking the person that went across and hit the Robertsons that deposition had to be read to you. You didn't have an opportunity to see what she looked like and judge her appearance and her credibility as to whether or not her story that a truck had run off the road was credible or not.

■ While we acknowledge the impropriety of Kaw's statements during closing argument as to the absence of the witnesses who testified by deposition and the jury's inability to assess their credibility, we cannot find that these improper remarks invoked passion, hatred, or prejudice rising to the level of plain error.

Point denied.

■ In the second point of their cross-appeal, the Robertsons argue that the trial court erred in reading the verdict directing instructions against Kaw (Instructions Number 19 and 23) and in refusing to submit the Robertsons' Instruction "A" because the verdict directing instructions submitted by the trial court erroneously declared the law. The Robertsons contend that Instructions Number 19 and 23 required a finding by the jury that any sign or placard on a truck furnished by Kaw was in connection with a lease and that the truck was hauling regulated freight at the time of the Robertsons' injuries. These elements are not required, they argue; rather, the mere presence of a sign or placard on the truck established a presumption of vicarious liability of the identified carrier.

We disagree. In *Johnson v. Pacific Intermountain Express Co.*, 662 S.W.2d 237 (Mo. banc 1983), *cert. denied*, 466 U.S. 973, 104 S.Ct. 2349, 80 L.Ed.2d 822 (1984), the Missouri Supreme Court discussed the vicarious liability of an I.C.C. certified carrier and held that the carrier may be held liable for the driver's negligence if the jury finds that: (1) the sign or identifying legend was furnished by the carrier in connection with a lease; (2) the sign was on the truck at the time of the accident; and (3) the truck was hauling regulated freight at the time of the accident. *Id.* at 245. The court in *Johnson* found that the jury instruction given properly stated the essential elements.

The Robertsons argue that the court's decision in *Parker v. Midwestern Distribution, Inc.*, 797 S.W.2d 721 (Mo.App.1990), eliminated the need for the first and third elements set forth above. The Robertsons contend that their Instruction "A", which allowed the jury to render a verdict against Kaw if they found that a truck bearing a KAW placard was being operated on the wrong side of the road in a negligent manner, was sufficient.[2]

---

**2.** The Robertsons' Instruction "A" stated that the jury must render a verdict in favor of the Plaintiffs and against KAW Transport if the jury believed:

FIRST, that a truck with a sign identifying Kaw Transport was on the wrong side of the road, and

SECOND, the operator of said truck was thereby negligent, and

THIRD, such negligence directly caused or directly contributed to cause damage to Plaintiffs.

The court's decision in *Parker*, however, did not change the required elements for vicarious liability as set forth in *Johnson*. The verdict director in *Parker* read as follows:

In Verdict A, you must assess a percentage of fault to defendant Midwestern Distribution Corp., whether or not plaintiff was partly at fault, if you believe:

First, the tractor trailer involved in the collision with Robert Parker carried Midwestern Distribution Corp. signage on the tractor at the time of the collision, and

Second, *such signage was furnished by Midwestern Distribution Corp. in connection with a lease,* and

Third, *that truck was hauling freight between states at the time of the collision,* and

Fourth, the unidentified driver either: failed to keep a careful lookout, or knew or by the use of the highest degree of care could have known that there was a reasonable likelihood of collision in time thereafter to have stopped, but failed to do so, and

Fifth, said truck driver, in any one or more of the respects submitted in Paragraph Fourth, was thereby negligent, and

Sixth, such negligence directly caused or directly contributed to cause damage to plaintiff Robert Parker (emphasis added).

Thus, the court in *Parker* instructed the jury in accordance with the *Johnson* verdict director, including the elements which the Robertsons argue are not required. Furthermore, the court in *Parker* analyzed the facts in accordance with the *Johnson* elements:

We turn to the three elements identified in *Johnson*. There was evidence that trucks operated by Midwestern carried that logo and utilized trailers with the Leaseway logo. These tractors and trailers were operated under leases between Midwestern and the drivers. The identifying legends were on the tractor and trailer at the time of the accident. There was no direct evidence of the freight being hauled at the time of the accident. . . . From [indirect] evidence, the jury could find it was more probable than not that the rig in question was carrying regulated freight at the time of the accident.

*Parker*, 797 S.W.2d at 724. The *Parker* decision upheld the verdict directing instruction in *Johnson*.

Instructions Number 19 and 23, which were given to the jury in the case at bar, reiterated the elements set forth in *Johnson*, and thus reflect the law in Missouri on vicarious liability of I.C.C. regulated carriers. The trial court did not err in reading these verdict directing instructions to the jury and in refusing to submit the Robertsons' Instruction "A" which did not reflect the law in Missouri.

The trial court's granting of a new trial with regard to Cameron is affirmed. We also affirm the trial court's denial of the Motion for New Trial with regard to Kaw.

All concur.