

# In the Missouri Court of Appeals
# Eastern District
## DIVISION TWO

| | | |
|---|---|---|
| LISA HEARN AND DANIEL HEARN, | ) | No. ED108315 |
| | ) | |
| Appellants, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Annette Llewellyn |
| ABF FREIGHT SYSTEM, INC., | ) | |
| | ) | |
| Respondent. | ) | FILED: August 11, 2020 |

## Introduction

Lisa and Daniel Hearn ("the Hearns") appeal from the trial court's judgment following a jury verdict in favor of ABF Freight System, Inc. ("ABF") on the Hearns' claims for negligence and loss of consortium arising out of a motor vehicle accident. In Point One, the Hearns allege the trial court erred in denying their motion for a directed verdict given ABF's vicarious liability under the doctrine of logo-liability. In Point Two, the Hearns argue the trial court erred by instructing the jury that the Hearns had the burden of proving the agency relationship between ABF and the truck driver causing the accident because such instruction was inconsistent with the logo-liability doctrine. Because the logo-liability doctrine only applies to carrier-lessees and the record reveals no evidence that ABF operated as a carrier-lessee, the doctrine is inapplicable in this case, and the trial court correctly denied the motion for a directed verdict and correctly declined to instruct the jury on the logo-liability doctrine. Accordingly, we affirm the judgment of the trial court.

Factual and Procedural History

Lisa Hearn was seriously injured in a car accident after she was struck by a vehicle being driven by Paulette Anthony ("Anthony"). Both the Hearns and Anthony alleged that Anthony struck Lisa Hearn due to the negligent operation of a truck bearing ABF signage. Specifically, the truck was alleged to have crossed into Anthony's lane, either striking Anthony or causing her to swerve to avoid the truck, at which time Anthony collided head-on with Lisa Hearn. Lisa Hearn claimed to have interacted with the truck driver following the accident. However, the truck driver left the scene before police arrived, and the truck and driver were never identified beyond the claim that the truck bore ABF signage.

Both the Hearns and Anthony sued ABF for negligence, and the cases were tried together. The evidence presented by the Hearns, Anthony, and ABF at trial predominantly concerned whether the truck was an ABF truck and whether the driver of the truck was an employee of ABF.

At the close of evidence, the Hearns moved for a directed verdict in their favor. Specifically, the Hearns asked the trial court to direct the jury to enter a verdict against ABF under the logo-liability doctrine if the jury found the truck in question bore ABF's signage. The trial court treated the Hearns' motion as a motion for summary judgment, or in the alternative, a motion for directed verdict. ABF countered that the logo-liability doctrine was inapplicable and that the traditional principles of agency and vicarious liability applied. In particular, ABF maintained that the logo-liability doctrine did not apply because ABF owned its trucks rather than leasing them and that the logo-liability doctrine applied only to carrier-lessee relationships. ABF also moved for a directed verdict, arguing that the Hearns had not submitted evidence to establish ABF's vicarious liability for the actions of the truck driver. The trial court denied both motions and ruled that the issue of agency would be submitted to the jury.

During the jury-instruction conference, the Hearns objected to Instructions No. 9, 11, and 15, each of which addressed the issue of agency. Specifically, Instruction No. 9 provided:

> Operating the truck was within the "scope and course of employment" as that phrase is used in these instructions if:
>
> 1.  it was performed by the driver to serve the business of [ABF], according to an express or implied agreement with [ABF], and
>
> 2.  [ABF] either controlled or had the right to control the physical conduct of the driver.

Instruction No. 11 provided that the jury must find the driver was driving the truck "within the scope and course of employment by [ABF], at the time of the collision," in order to find ABF liable for negligence against the Hearns. Instruction No. 15 mirrored Instruction No. 11 but concerned Anthony rather than the Hearns. The Hearns specifically objected to the interjection of a traditional agency analysis through these proposed jury instructions. The Hearns tendered alternative instructions based upon the logo-liability doctrine, instructing the jury that it need only find the truck bore ABF's signage, was negligent, and caused damage to the Hearns in order to find in favor of the Hearns and against ABF. The trial court overruled the Hearns' objections and rejected their proposed instructions, reasoning that logo-liability doctrine applied only to a carrier-lessee relationship, evidence of which was lacking in the present case.

The jury returned a verdict in favor of ABF and against the Hearns. On Anthony's claim, the jury also returned a verdict for ABF, specifically finding that neither Anthony nor ABF were at fault. The Hearns now appeal.

Points on Appeal

In Point One, the Hearns contend that the trial court erred in denying their motion for a directed verdict on agency because consideration of traditional agency principles was precluded under the logo-liability doctrine. In Point Two, the Hearns allege that the trial court erred in

instructing the jury that the Hearns had to prove the traditional requirements of agency because the less demanding doctrine of logo-liability applied.

Discussion

**I.      The History of the Logo-Liability Doctrine in Missouri Courts**

Both parties offer the public policy doctrine of logo-liability as support for their positions on appeal.  Generally, the doctrine of logo-liability provides a means of imposing vicarious liability over carriers for the negligence of truck drivers other than through established agency principles.  See Parker v. Midwestern Distribution, Inc., 797 S.W.2d 721, 724 (Mo. App. E.D. 1990) (citing Johnson v. Pac. Intermountain Express Co., 662 S.W.2d 237, 240, 246 (Mo. banc 1983)).  Because the parties' arguments largely focus on the significance—or lack thereof—of factual distinctions between past cases addressing the applicability of logo-liability, we will first examine the precise facts and holdings at issue and articulate a clear framework for the application of the logo-liability doctrine under Missouri law.

The doctrine of logo liability was first addressed by the Supreme Court of Missouri in Brannaker v. Transamerican Freight Lines, Inc., 428 S.W.2d 524 (Mo. 1968).  Examining the history of carrier-lessee arrangements and related legislation, Brannaker noted that carrier-lessees would enter into leases with "often unreliable" independent contractors to haul cargo for single trips or short durations, allowing carrier-lessees to "evad[e] their public responsibilities." Id. at 528–29.  Some tractor-trailer truck owners would lease their trucks to common carriers who assumed control over transporting the goods being hauled.  Under traditional agency principles, the common carrier was relieved of liability on return trips because the lessor had performed its one-way contract and was no longer engaged in business on behalf of the carrier. Duke v. Thomas, 343 S.W.2d 656, 659 (Mo. App. St. Louis 1961) (internal citation omitted).

4

As a result of the increasing use of lease arrangements by common carriers, the United States Congress passed legislation authorizing the Interstate Commerce Commission ("the I.C.C.") to enact regulations to assure that carrier-lessees "be fully responsible for the operation" of the motor vehicles they lease. Brannaker, 428 S.W.2d at 528 (citing 49 U.S.C. § 304(e)(2) (1964)). The I.C.C. subsequently passed regulations establishing such full responsibility, requiring vehicles bear the I.C.C. identification numbers of the carrier-lessee for whom they are hauling and that such identification be removed when the lease is terminated. Id. at 529 (citing 49 C.F.R. § 207.4 (1964)). As a result of the I.C.C. regulations, authorized carriers would remain liable for the negligence of those who operated and drove the tractor-trailers on our roads and highways.

Under the relevant facts in Brannaker, a tractor-trailer driver leased his tractor to the defendant carrier-lessee for two years. Id. at 527. The defendant then supplied the trailer for the driver to haul. Id. When a disagreement arose between the driver and defendant, the driver returned the trailer and stopped hauling on behalf of the defendant. Id. However, although the driver began hauling a trailer provided by someone other than the defendant, the name of the defendant's company remained affixed to the driver's tractor, as did the numbers of the relevant certificates and permits associated with the I.C.C. and Missouri Public Service Commission. Id. A motor vehicle accident occurred in which the driver of the tractor-trailer struck a vehicle, which then struck the plaintiff. Id. The injured plaintiff successfully brought suit and obtained a verdict against the defendant whose name remained affixed to the tractor. Id. On appeal, the defendant maintained the trial court should have granted its requested directed verdict because the plaintiff had not adduced substantial evidence that the driver of the tractor was acting within the scope of employment on behalf of the defendant at the time of the accident. Id. at 533.

Brannaker held that the trial court did not err in declining to enter a directed verdict because factual questions remained as to the lessee relationship at the time of the accident. Id. at 535–36. In particular, the lease arrangement made the defendant "liable for the negligence of the owner-driver of the leased equipment to the same extent it was responsible for the negligence of one of the lessee's own drivers when operating the carrier's own equipment." Id. at 534 (internal citations omitted). Thus, the defendant would not be held vicariously liable for the tortious conduct of one of their drivers, **absent** a finding that the driver was acting in the scope of employment at the time of the accident. Id. (internal citations omitted). Because there was evidence from which the jury could have concluded either that the driver was or was not acting in the scope of his employment with the defendant, Brannaker ultimately concluded the issue of vicarious liability could not be decided as a matter of law and that the issue was appropriately submitted to the jury. Id. at 534–35.

The Court later addressed the issue of logo-liability in Johnson, 662 S.W.2d 237. In Johnson, the defendant appealed a jury verdict in favor of the deceased victim of a motor vehicle accident in which "[t]here [was] no claim, and no evidence, that the truck was on a mission for [the defendant carrier-lessee] at the time of the fatal accident." Id. at 242. Because the evidence clearly showed that the truck was hauling regulated freight for an entity other than the defendant at the time of the accident, the plaintiff sought to establish liability solely through the logo-liability doctrine. Id. at 240, 242. The relevant issue on appeal was the propriety of the trial court's instructions that the jury find the defendant liable if it determined both that the defendant had provided signs identifying the defendant to the driver for display on the driver's truck and that the defendant had failed to remove the signs from the truck before the accident. Id. at 242.

6

Relying on "statutory policy rather than a conventional respondeat superior theory[,]" Johnson broadly recognized that the logo-liability doctrine may establish liability "based on appearances, not actualities[,]" with the purpose of "increasing the likelihood that a substantial entity will be available to respond to any judgment rendered" in favor of a plaintiff. Id. at 243, 245, 246. Johnson explained that the "maximum effect" of the logo-liability doctrine as described in Brannaker "would be to make the [defendant] liable as [the] owner, and that the owner would not be responsible for the employee's use of the vehicle in a purely personal mission." Id. at 243 (citing Brannaker, 428 S.W.2d 524). It is noteworthy to any discussion of the logo-liability doctrine to acknowledge the material factual differences between Johnson and Brannaker. Unlike the posture of Brannaker, there was no factual dispute in Johnson that the truck involved in the accident was hauling regulated freight at the time of the accident as opposed to being on a mission personal to the driver. Id. Johnson explained that:

> Brannaker does support the proposition that ***the mere presence on a vehicle of a placard furnished by a carrier is not conclusive of the carrier's vicarious liability***, but it involves two factual possibilities not here present, as follows: (1) the carrier may have made reasonable efforts to terminate the lease and to reclaim its identifying signs; or (2) the vehicle may have been used on a mission personal to the driver, ***not involving the hauling of freight for the benefit of the lessee carrier or anyone else***, at the time of the accident.

Id. at 244 (emphasis added). Johnson concluded the following as to the parameters of the logo-liability doctrine:

> [The defendant] may be held liable for the truck driver's negligence, without regard to the continuing force of the lease, if the jury finds: (1) that a sign or identifying legend was furnished by the carrier in connection with a lease; (2) that the sign was on the truck at the time of the accident; and (3) that the truck was hauling regulated freight at the time of the accident.

Id. at 245. While the contested jury instructions did not specify the third element, Johnson determined the jury necessarily believed the third element was met based on its other findings and found no error in the instructions. Id.

This Court revisited the logo-liability doctrine in Parker, 797 S.W.2d 721. Parker broadened the application of the logo-liability doctrine by interpreting Johnson to have abrogated a critical requirement announced in Brannaker—the requirement of proving that the driver of the truck was acting within the scope of their employment with the defendant. Id. at 723. Parker explained this evolution of the logo-liability doctrine noting that Johnson emphasized the nature of constructive agency and the importance of appearances over actualities. Id. at 724 (citing Johnson, 662 S.W.2d at 240, 246). Specifically, Parker focused on the language in Johnson that "the mere presence on a vehicle of a placard furnished by a carrier is not *conclusive* of the carrier's vicarious liability[.]" Id. (quoting Johnson, 662 S.W.2d at 244). Parker reasoned therefrom that the display of a carrier-lessee's logo created a presumption of the carrier's vicarious liability which a defendant could overcome by presenting "evidence that the carrier attempted unsuccessfully to destroy the appearance of a relationship" or "evidence that the driver was engaged in an enterprise unrelated to the apparent relationship purpose, i.e. the hauling of freight." Id. at 723 (citing Johnson, 662 S.W.2d at 244). Parker's reasoning would allow the presumption to be rebutted by evidence that the driver was not authorized to operate the vehicle at all. Id. at 723–24. Accordingly, Parker rejected the defendant's contention on appeal that the plaintiff failed to make a submissible case because the plaintiff did not establish that the driver was an agent of the defendant.[1] Id. at 722, 724.

---

[1] We reversed the award of punitive damages on other grounds. Parker, 797 S.W.2d at 725.

Missouri courts next considered the issue of logo-liability in <u>Robertson v. Cameron Mut. Ins. Co.</u>, 855 S.W.2d 442 (Mo. App. W.D. 1993). More closely aligned with the facts in this appeal, the plaintiff in <u>Robertson</u> argued on appeal that the jury should have been instructed that vicarious liability over the defendant was established by a simple finding that the truck bore defendant's placard—nothing more. <u>Id.</u> at 449. Rejecting this argument, the Western District reaffirmed plaintiffs' burden of proving each of the three elements enumerated in <u>Johnson</u> in order to impose vicarious liability on a defendant under the logo-liability doctrine. <u>Id.</u> at 450 (citing <u>Parker</u>, 797 S.W.2d at 724).

Our courts most recently addressed the issue of logo-liability in <u>Horner v. FedEx Ground Package Sys. Inc.</u>, 258 S.W.3d 532 (Mo. App. W.D. 2008). In <u>Horner</u>, the truck involved in the accident bore the defendant carrier-lessee's logo, the defendant's Department of Transportation registration number, and was under an exclusive lease-agreement to provide trucking services to the defendant. <u>Id.</u> at 534. The trial court ruled that an irrebuttable presumption of vicarious liability was established when a certified carrier's placards are on a truck at the time of the accident and that evidence showing the presence of the placards on the truck at issue required that the defendant be held vicariously liable for any negligence of the truck driver as a matter of law. <u>Id.</u> at 535, 537. The jury subsequently found in favor of the plaintiff. <u>Id.</u> at 534. On appeal, the defendant argued that the trial court erred in holding the defendant was vicariously liable as a matter of law. <u>Id.</u> The defendant countered that the logo-liability doctrine, even where applicable, creates only a rebuttable presumption of vicarious liability. <u>Id.</u> at 537. Although declining to answer whether the presumption raised by the logo-liability doctrine is rebuttable or irrebuttable, the Western District explained that "<u>Johnson</u> suggests that the presumption of vicarious liability can be rebutted, ***but only*** (1) where the [I.C.C.] carrier-lessee

9

has attempted to end the lease and reclaim its placards, or (2) where the driver has embarked upon a personal mission." Id. at 539 (emphasis added) (citing Parker, 797 S.W.2d at 723–24). The Western District held that the undisputed material facts of the case clearly showed the driver had acted in the course and scope of his employment for the defendant on the defendant's behalf. Accordingly, the Court held that the defendant was liable under the logo-liability doctrine, regardless of whether the logo-liability presumption is rebuttable or irrebuttable. Id.

## II. The Framework for the Logo-Liability Doctrine

Our examination of the development of the logo-liability doctrine in Missouri reveals the following framework for imposing vicarious liability upon a defendant under the doctrine.

First, Johnson clearly identifies three elements required to apply logo-liability: "(1) that a sign or identifying legend was furnished by the carrier in connection with a lease; (2) that the sign was on the truck at the time of the accident; and (3) that the truck was hauling regulated freight at the time of the accident." Johnson, 662 S.W.2d at 245. Johnson further clarifies that, regarding the first element, it is not a requirement that the lease be in continuing effect. Id. at 245–46.

Second, Parker explicitly holds that the logo-liability doctrine creates a rebuttable presumption in favor of imposing vicarious liability on the defendant once the elements of logo-liability are established. Parker, 797 S.W.2d at 723. This holding has not been overruled. Indeed, Horner declined to consider whether the presumption raised by the logo-liability doctrine is rebuttable or irrebuttable. Horner, 258 S.W.3d at 539. Relying on Parker, the Horner court opined only that Johnson seemed to create such a rebuttable presumption. Id. (citing Parker, 797 S.W.2d at 723–24).

Third, consistent with the above, the presumption of vicarious liability may be rebutted by the defendant upon a showing of facts that either 1) the carrier-lessee attempted to end the

10

lease and reclaim its signage; or 2) that the driver was engaged on a personal mission not concerning the hauling of regulated freight when the accident occurred. Horner, 258 S.W.3d at 539 (citing Parker, 797 S.W.2d at 723–24). Additional grounds may also exist that would serve to rebut the presumption, such as evidence that the driver was not authorized to operate the vehicle at all. See Johnson, 662 S.W.2d at 243; Parker, 797 S.W.2d at 723–24.

Importantly, the preceding framework diverges from the principles of traditional respondeat superior vicarious liability in two critical respects. First, under the logo-liability doctrine, the defendant has the burden of rebutting the imposition of vicarious liability by showing that the driver was on a personal mission, as opposed to the plaintiff's burden of proving that the driver's tortious conduct was within the course and scope of the driver's employment. Compare Horner, 258 S.W.3d at 539 (internal citation omitted), with Ewing-Cage v. Quality Prods., Inc., 18 S.W.3d 147, 150 (Mo. App. W.D. 2000) (internal citations omitted). Second, vicarious liability under the logo-liability doctrine may be established even when a truck is hauling regulated freight for an entity other than the carrier-lessee defendant, as opposed to when the truck is being driven only in furtherance of the interests of the defendant. Compare Johnson, 662 S.W.2d at 242, 245, with Ewing-Cage, 18 S.W.3d at 150. These two differences broaden the application of vicarious liability from the traditional principles of agency, thereby reinforcing the acknowledged public policy of the logo-liability doctrine to "increas[e] the likelihood that a substantial entity will be available to respond to any judgment rendered" and to ensure that carrier-lessees be responsible for the conduct of the independent contractors with which they choose to contract. Johnson, 662 S.W.2d at 243; see also Brannaker, 428 S.W.2d at 528–29 (internal citations omitted).

11

Having established a framework for the application of the logo-liability doctrine that reconciles precedential authorities and is consistent with the underlying purposes of the doctrine, we now apply this legal framework to the present case.

## III.  Analysis of the Present Case

We opt to review the Hearns' second point on appeal first.  Point Two focuses on the jury instructions, specifically alleging that the trial court erred in instructing the jury that the Hearns had the burden of proving the traditional principles of agency required to impose vicarious liability on ABF.  The Hearns posit that the jury instructions should have reflected the logo-liability doctrine, tasking the jury only with finding whether the truck bore ABF's signage, whether the truck driver was negligent, and whether the truck driver's negligence damaged the Hearns.

We review whether a jury was properly instructed de novo.  Edgerton v. Morrison, 280 S.W.3d 62, 65 (Mo. banc 2009) (internal citation omitted).  We will only reverse due to instructional error if the party alleging error on appeal establishes that the instructions at issue misdirected, misled, or confused the jury.  Dhyne v. State Farm Fire & Cas. Co., 188 S.W.3d 454, 459 (Mo. banc 2006) (internal citation omitted).  The party alleging the error also bears the burden of proving they were prejudiced by the contested instructions.  SKMDV Holdings, Inc. v. Green Jacobson, P.C., 494 S.W.3d 537, 559 (Mo. App. E.D. 2016) (citing Fleshner v. Pepose Vision Inst., P.C., 304 S.W.3d 81, 90–91 (Mo. banc 2010)).

Instruction No. 11 placed the burden upon the Hearns to show that "the driver was operating [ABF]'s motor vehicle within the scope and course of employment by [ABF] at the time of the collision[.]"  Conversely, a jury instruction applying the logo-liability doctrine would not require the Hearns to make such a showing, but instead would place the burden on ABF to rebut the presumption of liability by proving the truck driver was on a personal mission not

12

concerning the hauling of regulated freight. See Johnson, 662 S.W.2d at 245; Horner, 258 S.W.3d at 539 (citing Parker, 797 S.W.2d at 723–24). We agree that, *if the logo-liability doctrine applied in the case at hand*, the jury was wrongly instructed on the burden of proof concerning agency, as the Hearns now argue. See Johnson, 662 S.W.2d at 245; Horner, 258 S.W.3d at 539 (internal citation omitted). However, the Hearns have failed to meet their burden on appeal of establishing the jury was erroneously instructed because we are not persuaded that the logo-liability doctrine applies given the undisputed facts of the present case. See Dhyne, 188 S.W.3d at 459 (internal citation omitted).

"An issue submitted by an instruction must be supported by the evidence." Edgerton, 280 S.W.3d at 65 (internal citation omitted). In considering whether there was sufficient evidence to support the giving of an instruction, "[we view] the evidence in the light most favorable to its submission." Spence v. BNSF Ry. Co., 547 S.W.3d 769, 777 (Mo. banc 2018) (internal quotation omitted).

Here, the Hearns objected to the trial court's agency instructions and instead submitted instructions for vicarious liability under the logo-liability doctrine in which the jury had to find only that the truck bore ABF's signage, was negligent, and damaged the Hearns. The trial court rejected the proffered instruction in favor of instructing the jury on the traditional principles of agency. Critically, the record lacks evidence supporting the submission of jury instructions premised upon the logo-liability doctrine. See id.; Edgerton, 280 S.W.3d at 65. Specifically, the first element required to establish liability under the logo-liability doctrine is "that a sign or identifying legend was furnished by the carrier *in connection with a lease*[.]" Johnson, 662 S.W.2d at 245 (emphasis added). Here, even viewing the evidence in the light most favorable to the giving of the Hearns' requested instructions, the record on appeal is void of *any* evidence that

13

ABF ever operated as a carrier-lessee.  See Spence, 547 S.W.3d at 777.  To the contrary, the testimony at trial uniformly concerned ABF *employees*, consistent with ABF's statements during motion arguments that all of its truck drivers are employees.  Accordingly, the trial court would have committed error had it instructed the jury consistent with the logo-liability doctrine because the record lacks any evidence to support the first required element that ABF signage was furnished in connection with a lease.  See Johnson, 662 S.W.2d at 245; Edgerton, 280 S.W.3d at 65.

Despite established precedent consistently repeating the "in-connection-with-a-lease requirement," the Hearns nevertheless argue that the logo-liability doctrine is not limited to carrier-lessee arrangements.  The Hearns' argument is unavailing and they fail to cite to a single case in which a Missouri court applied the logo-liability doctrine in the absence of a carrier-lessee relationship.  The Hearns reason that the application of the logo-liability doctrine by Missouri courts in previous cases involving runaway trucks that could not be identified supports instructing the jury on the logo-liability doctrine even absent evidence of a carrier-lessee relationship.  However, the facts of those cases do not support the Hearns' invitation for us to extend the application of the logo-liability doctrine.  In Johnson, contrary to the Hearns' assertion, the specific truck involved in the accident was identified.[2]  Johnson, 662 S.W.2d at 238.  In Robertson, the jury found in favor of the defendant only after being instructed that they had to find the defendant's signage was furnished to the unidentified truck *in connection with a lease*, instructions which were affirmed on appeal.  Robertson, 855 S.W.2d at 444, 449–50.  Finally, in Parker, although the specific truck was never identified, evidence was introduced that

---

[2] The Hearns cite Horner for the proposition that the truck in Johnson was unidentified.  Horner, 258 S.W.3d at 541 n.15 (internal citations omitted).  From context, it is clear to us that Horner was referring to the unidentified truck in Parker.  See id. (citing Parker, 797 S.W.2d at 724) (erroneously stating the truck in Johnson was unidentified immediately after citing Parker).

14

the truck in question bore the defendant's signage and that the defendant was a carrier-lessee. Parker, 797 S.W.2d at 722. Ultimately, none of the cases proffered by the Hearns support a holding that the logo-liability doctrine applies even in cases where, as here, the record lacks evidence that the defendant is a carrier-lessee.

Additionally, the Hearns contend that applying the logo-liability doctrine to cases only involving carrier-lessee cases runs contrary to the logic of the development of the doctrine. We disagree. History is clear that the logo-liability doctrine developed from a fundamental concern regarding the relationship between carrier-lessees and independent contractors, not concerns about employers and their truck-driver employees. See Brannaker, 428 S.W.2d at 528–29. The doctrine of logo-liability developed as large trucking interests used the carrier-lessee relationship to escape the imposition of vicarious liability under traditional principles of agency. See Duke, 343 S.W.2d at 658–59. Without question, the public policy supporting the creation of the logo-liability doctrine stemmed from a concern over a very specific issue that had arisen—and not to supplant the general rules of vicarious liability as developed under common law. See Brannaker, 428 S.W.2d at 528–29. The Hearns' contention fundamentally undermines the very foundation of the logo-liability doctrine. See id. Furthermore, the policy concerns about plaintiffs having a substantial entity from which they can recover are not implicated when the truck driver involved in an accident is the long-term employee of the trucking company as opposed to an independent contractor not tied to a given carrier-lessee on an ongoing basis. See Johnson, 662 S.W.2d at 243.

Because the Hearns adduced no evidence that ABF operated as a carrier-lessee, they failed to present the requisite facts allowing the jury to be instructed on imposing vicarious liability on ABF under the logo-liability doctrine. See Johnson, 662 S.W.2d at 245; Edgerton,

15

280 S.W.3d at 65. Accordingly, the trial court did not err when it refused Hearns' proffered vicarious liability instructions and instead submitted vicarious liability instructions to the jury based upon the traditional principles of agency law. See Edgerton, 280 S.W.3d at 65. Point Two is denied.

In Point One, the Hearns contend that the trial court erred in denying their motion for a directed verdict because the logo-liability doctrine required the jury enter a verdict in favor of the Hearns if the jury found the truck bore ABF's signage. We review denials of directed verdicts de novo when the denial is based on a matter of law.[3] Bailey v. Hawthorn Bank, 382 S.W.3d 84, 92 (Mo. App. W.D. 2012) (internal citation omitted). Point One must also fail because it is premised upon the applicability of the logo-liability doctrine, which we have already rejected due to the in-connection-with-a-lease requirement. See Johnson, 662 S.W.2d at 245. Accordingly, the trial court did not err in denying the motion for a directed verdict. See Bailey, 382 S.W.3d at 92 (internal citation omitted). Point One is denied.

### Conclusion

The judgment of the trial court is affirmed.

_____
KURT S. ODENWALD, Judge

Philip M. Hess, P.J., concurs.
Lisa P. Page, J., concurs.

---

[3] Given that this point on appeal might be more properly understood as an allegation that the jury was improperly instructed, we note again that such claims are subject to de novo review. Edgerton, 280 S.W.3d at 65 (internal citation omitted). Similarly, we note that the trial court alternatively treated the Hearns' motion as a motion for summary judgment, which we also review de novo. Gavan v. Bituminous Cas. Corp., 242 S.W.3d 718, 720 (Mo. banc 2008) (internal citation omitted).